The Chicago, Peoria and St. Louis Railway Company, Appellant, *vs.* The Jacksonville Railway and Light Company, Appellee.

*Opinion filed April 21, 1910—Rehearing denied June 8, 1910.*

1. Railroads—*words "main track," used in Crossings act of 1907, have no technical meaning.* The words "main track," used in the Crossings act of 1907, requiring a railroad desiring to cross the main track of another railroad to apply to the railroad and warehouse commissioners for permission, are not used with any technical meaning but in their ordinary sense of principal, chief, leading or most important track.

2. Same—*what is not the "main track" of a railroad.* A short piece of track at the terminus of a railroad, which can only be used by throwing a switch and which is used exclusively to enable incoming freight trains to reach a switch track to the freight depot, is not the "main track" of such railroad within the meaning of the Crossings act of 1907, (Laws of 1907, p. 475,) though such track, prior to the division of the railroad and the construction of other connections, was a part of the main line.

3. Pleading—*complainant must stand or fall with case made by its bill.* Every fact essential to the complainant's right to maintain its bill and obtain the relief sought must be stated in the bill, and no relief can be granted for matters not charged in the bill, even though such matters may be apparent from other parts of the pleadings and the evidence.

4. Injunction—*when right of foreign corporation to operate street railway is not involved.* · Where the complainant railroad company bases its right to an injunction upon the ground that the defendant street railway company, which is alleged in the bill to be a domestic corporation, is attempting to cross the complainant's main track without complying with the Crossings act of 1907, and the complainant, instead of amending its bill, joins issue by replication when the defendant answers denying that it is a domestic corporation and averring that it is a foreign corporation, the defendant's alleged lack of power, as a foreign corporation, to operate a street railway cannot be availed of by the complainant as ground for the injunction.

Appeal from the Circuit Court of Morgan county; the Hon. Owen P. Thompson, Judge, presiding.

Wilson, Warren & Child, for appellant.

Graham & Graham, (George W. Burton, and Layman & Morrisey, of counsel,) for appellee.

Mr. Justice Cooke delivered the opinion of the court:

This is a bill in chancery filed by the Chicago, Peoria and St. Louis Railway Company against the Jacksonville Railway and Light Company to obtain an injunction against defendant to prevent it from extending its street railway tracks across the track of the complainant in East State street, in the city of Jacksonville, at the intersection of State street and Illinois avenue. By its amended bill the complainant alleges that it is a common carrier organized under the laws of Illinois, and was on the 23d day of October, 1907, and for several years prior thereto, possessed of and operating a line of steam railroad extending through the city of Jacksonville on Illinois avenue to and beyond the place where said avenue intersects State street; that the Jacksonville Railway and Light Company is a corporation organized under the laws of the State of Illinois as a common carrier of passengers, and was possessed of and operating a system of street railways in the city of Jacksonville, one line of which was located on State street west of the intersection of State street with Illinois avenue; that the main track of complainant crosses State street in Illinois avenue, and that the street railway company is threatening to extend its line east on State street across complainant's main track, and is about to tear up the rails from complainant's track and force a crossing of its railroad at grade where complainant's main track crosses East State street. It is also averred in the bill that the Chicago, Burlington and Quincy Railway Company and the Chicago and Alton Railway Company both own and operate tracks of railroad in Illinois avenue, all of which cross East State street east of the point where complainant's line crosses said street;

that in November, 1906, the street railway company threatened to cross at grade the tracks of the Chicago, Burlington and Quincy and the Chicago and Alton railway companies and also the tracks of complainant in said Illinois avenue, and that on the 22d day of November, 1906, complainant filed a bill to enjoin the street railway company from constructing such crossing, upon which a temporary injunction was issued; that the street railway company filed a sworn answer, in which it denied any intention to cross complainant's track and averred that it would not attempt to put in such crossing without notice to complainant; that upon the filing of such sworn answer the court dissolved the temporary injunction and dismissed complainant's original bill. The original bill, the answer thereto and the decree dismissing the same are made exhibits to the present bill. The amended bill charges that the Burlington and Alton railway companies made application to the railroad and warehouse commissioners to fix the manner, place, terms and conditions which were to be observed by the railway company in making such crossing, and that the records of the railroad and warehouse commissioners show that such application is still pending and undetermined before said board. The complainant avers that there has been no agreement on its part or consent of any kind given to the defendant to make said crossing and that the railroad and warehouse commissioners have not fixed the manner and place of making such crossing; that no condemnation proceedings have been instituted for the purpose of condemning the right of way across complainant's railway track at the place in question. It is alleged that if the crossing is put in without the action of the railroad and warehouse commissioners and without any agreement or consent on the part of complainant, the lives of persons using complainant's railroad will be greatly endangered and it will suffer irreparable loss and injury. The prayer of the bill is for an injunction restraining the defendant street railway company from tearing up the rails

of complainant's track and from constructing its said street railway across the track of the complainant at the point in question.

The defendant street railway company answered the bill, admitting its allegations in reference to the location and operation of complainant's railroad tracks. The answer denies that defendant is a corporation organized under the laws of the State of Illinois but alleges that it is a corporation organized under the laws of the State of Maine, and charges that it is possessed of and operates a street railway in the streets of Jacksonville, and particularly in State street, as charged in the bill. The answer denies that the defendant is about to tear up the rails from complainant's track or to do any injury to the track or property of the complainant. The answer avers that with the knowledge of the Chicago, Burlington and Quincy Railway Company the defendant has expended a large amount of labor and money constructing a crossing over the tracks of the said Chicago, Burlington and Quincy Railway Company, and had made said crossing up to the track of the complainant in East State street with the intention of crossing the track of the complainant, and that the complainant knew, during the thirty days that this work was being done, that the defendant intended to put in said crossing over the track of the complainant, and that complainant made no objection and gave the defendant no notice that there was any objection to making such crossing until the writ of injunction was served, on the afternoon of the 24th day of October, 1907. The answer disclaims any intention to disturb the rails or ties of complainant, and avers that the only purpose is to put in a crossing which will connect defendant's track in East State street, which is east of the crossing, with that portion of its track which is west of the crossing, so as to permit it to operate the two lines as one continuous line without the necessity of transferring passengers over said crossing. The answer alleges that the city of Jacksonville

has passed legal ordinances granting to defendant the right to lay its track and operate its road on East State street over and across the intersection of Illinois avenue at ·the place described in the bill, and copies of said ordinances are attached to the answer. The answer denies that the track of complainant which crosses State street is a main track, within the meaning of the Railroad Crossings act of 1907.

A replication was filed to this answer and the cause was referred to a master in chancery, who heard the evidence and reported his findings to the court. The master found from the evidence that complainant's track across East State street was not its main track, but that its main track terminated at the north line of East State street; that defendant was not about to tear up the rails and construct or force a crossing over complainant's main track; that there was no equity in the bill, and recommended that it be dismissed and that defendant be allowed $225 for solicitors' fees and $56.40 for expenses in procuring the dissolution of the injunction. The report of the master was confirmed by the circuit court of Morgan county in all respects, and a final decree entered dismissing the bill for want of equity and awarding defendant $281.40 damages. To reverse this decree complainant has appealed to this court.

Appellant's first contention is, that its track over which appellee proposes to cross is its *main* track, and therefore a court of chancery will restrain the construction of such crossing until the railroad and warehouse commissioners have acted in the premises and prescribed the place and manner in which such crossing shall be made. Appellee denies that appellant's track which it proposes to cross is a *main* track, within the meaning of the Crossings statute.

In 1907 the legislature passed an act amending sections 1 and 2 of the act entitled "An act in relation to the crossing of one railway by another and to prevent danger

to life and property from grade crossings," so as to make said sections read as follows:

"Sec. 1. That hereafter any railroad company desiring to cross with its track or tracks the main track of another railroad company, shall, before constructing any such crossing, apply to the railroad and warehouse commission for permission to make such crossing, and it shall thereupon be the duty of such commission to view the ground, and give all parties interested an opportunity to be heard. After full investigation, and with due regard to safety of life and property, said commission shall give a decision prescribing the place where and the manner in which said crossing shall be made, but in all cases the compensation to be paid for property actually required for the crossing and all damages resulting therefrom, shall be determined in the manner provided by law in case the parties fail to agree: *Provided,* that said commission shall only grant permission to construct such crossing at such place and in such manner as will not unnecessarily impede or endanger the travel or transportation upon the railroad to be crossed.

"Sec. 2. The railroad company seeking the crossing, shall, in all cases, pay the costs and expenses of the commission incurred in the investigation and if permission for a grade crossing is given, shall bear the entire expense of the construction thereof, together with the cost of installing such interlocking or other safety appliance as shall be required, and the cost of the maintenance thereof. If a separation of grades is required at such crossing, then such commission shall decide and include in the order authorizing such crossing the proportion of the expense thereof to be paid by the railroads interested in said crossing, respectively, but not more than one-third of such expense shall be charged against the senior road. Interurban electric railroads and street railroads are hereby declared to be railroads and within the meaning of this act."

The most important change effected by the above act is to require the railroad desiring to cross the main track to apply to the railroad and warehouse commissioners for permission to make such crossing, while the old law only required the action of the railroad and warehouse commissioners where objections were made to the place or mode of the proposed crossing. The provision declaring interurban electric railroads and street railroads to be railroads, within the meaning of the act of 1907, was not found in the act of 1889.

The appellant affirms and appellee denies that the track which appellant owns and operates in State street is a main track. To maintain its position on this question appellant showed that the track in question was laid in 1870. At that time, and for several years thereafter, the track was used as a continuous line through the city of Jacksonville and was operated jointly by the Jacksonville and Southeastern and Peoria, Pekin and Jacksonville railroad companies. Such joint use of the line continued until 1893, when the two companies owning and operating it went into the hands of separate receivers. The line of road was then divided by setting a post about three hundred feet south of State street. Appellant succeeded to the title of that part of the line north of the post and the Chicago, Burlington and Quincy Railway Company obtained control of that portion of the line extending from the post south to Centralia. Thereafter the line of road was owned and operated by these two companies, each claiming the road to the division post. Prior to the partition of this road the line in question was unquestionably the main track of the companies owning and using it. At the time the Chicago, Burlington and Quincy acquired title to that portion of the road between the post in Jacksonville and Centralia, that company owned and operated another line which came into Jacksonville on the north side of the city and terminated at Independence street. Appellant's line of road extended from

the post north, crossing Independence street near the terminal point of the Chicago, Burlington and Quincy. In order to enable the Chicago, Burlington and Quincy to operate its two lines entering the city, an arrangement was entered into with appellant by which the Chicago, Burlington and Quincy was authorized to use the appellant's track from Independence street south to State street. The Burlington company erected a passenger station on the south side of State street. The track extending south to the post above referred to was too far east to be conveniently used by the Burlington in reaching its passenger station. The Burlington constructed a short piece of track from a switch connection a little north of the north line of State street and extending south so as to pass its station and then curving to the east and connecting with the Burlington line a little south of the division post. Appellant having no passenger station in the city of Jacksonville, entered into a contract with the Burlington by which appellant was permitted to use the Burlington passenger station. This contract was made some time before the commencement of this suit and was still in force at the time this cause was tried. All passenger trains on appellant's road came in from the north and proceeded on its own line until they reached a point a little north of the north line of State street, and there they ran on to the Burlington track and thence across State street to the Burlington station, which is as far south as appellant's trains go. The original track belonging to appellant, which extends from the north side of State street to the post south of State street, is used by appellant exclusively for freight trains. Appellant's freight depot is two blocks north of State street, on the east side of Illinois avenue. Freight trains coming in from the north proceed to State street on the same track that is used for passenger trains until the switch is reached, just north of State street. The switch is then thrown, which permits the freight train to go down south across State street on track No. 26 to

the post. It is this short track between the post and the switch north of State street that appellee desires to cross with its street railway track.

A number of railroad employees were introduced as expert witnesses by both parties. Those introduced by appellant testified, in response to hypothetical questions embodying the physical situation of the track in question and the use to which it was put, that in their opinion the track in question was appellant's main track, while on behalf of appellee about an equal number of witnesses who were experienced railroad men testified, in answer to a similar hypothetical question, that in their opinion appellant's main line terminated on the north side of State street, where it connected with the Burlington line leading to the passenger station. Both the master in chancery and the court below found that track No. 26 was not a main track.

The words "main track," used in the statute of 1907, are not technical words. There is nothing to indicate that these words were used in any other than their popular and well understood meaning. The adjective "main" describes the track, and is used in the sense of principal, chief, leading, or most important. There can be no question as to the main track of the appellant north of State street. Any train coming south on the main track with the switch closed would run to the Burlington station. In order to get on track No. 26 it is necessary to throw the switch, thus deflecting the train from the main track to this track. The appellee's witnesses base their opinions largely upon the position of the switch signal. When the switch connection leading to the Burlington track north of State street was set at safety the trains would all go to the Burlington station. When the switch was thrown it would open track No. 26 and the trains could proceed south across State street to the post. All of the witnesses experienced in railroading testified that by "main track" is meant the main artery for the movement of traffic between any two points.

Applying this definition to the situation here, it cannot be said that track No. 26 is the main artery between any two points. The south end of the track, as already shown, is a post. No freight or passengers are received or delivered at that point. The track is used merely as a convenient side-track to enable freight trains to go below the switch which admits them to the freight depot. It is used precisely in the same way that all railroads use switch tracks at stations. In our opinion there was no error in holding that appellant's track across State street is not a "main track," within the meaning of the Crossings law of 1907.

Under this view of the facts presented we do not find it necessary to express any opinion upon the question whether a failure to obtain the permission of the railroad and warehouse commissioners to cross a main track by a street car line is a sufficient reason for granting an injunction, in the absence of any showing that such proposed crossing is being constructed in an improper or dangerous manner.

Appellant contends that appellee, being a foreign corporation, has no right or power to operate a street railway in Illinois, and for that reason it should be enjoined from constructing the crossing in question. This contention is in direct conflict with the case made by appellant's bill. In its bill appellant alleged that appellee was a corporation organized under the laws of the State of Illinois. The bill prayed for relief, not upon the ground that appellee was a foreign corporation, but upon the ground that appellee was about to improperly extend its street railway system across the "main" track of appellant. In its answer to the bill appellee denied that it was an Illinois corporation and alleged that it was a corporation organized under the laws of the State of Maine. Instead of then seeking to amend its bill so as to be enabled to rely upon the foreign incorporation of appellee as a further ground for relief, appellant filed its replication to the answer and the whole matter was heard upon the bill thus framed and the issues so joined.

Appellant, on the hearing before the master, made proof that appellee was a foreign corporation, but under the state of the pleadings it cannot now avail itself of that proof. This court has repeatedly held, and it is a settled rule, that every fact essential to a complainant's right to maintain his bill and obtain the relief sought must be stated in the bill, and no relief can be granted for matters not charged in the bill even though such matters may be apparent from other parts of the pleadings and the evidence. As we have frequently stated heretofore, it is a fundamental rule of equity pleading that the allegations of a bill, the proof and the decree must correspond, and that the decree cannot give relief which facts disclosed by the evidence would warrant, where there are no averments in the bill to which the evidence can apply; and if the evidence disproves the case made by the bill, the complainant cannot be given a decree upon other grounds disclosed by the proofs unless the court permits the complainant to amend his bill so as to present the case disclosed by the evidence. A party can not make one case by his bill and another and different one by his proofs. He must stand or fall with the case made by his bill. (*McKay* v. *Bissett,* 5 Gilm. 499; *White* v. *Morrison,* 11 Ill. 361; *Rowan* v. *Bowles,* 21 id. 16; *Randolph* v. *Onstott,* 58 id. 52; *Ohling* v. *Luitjens,* 32 id. 23; *Helm* v. *Cantrell,* 59 id. 524; *Munn* v. *Burges,* 70 id. 604; *Dorn* v. *Geuder,* 171 id. 362; *Lang* v. *Metzger,* 206 id. 475; *Schmitt* v. *Weber,* 239 id. 377; *Rice Co.* v. *McJohn,* 244 id. 264.) The question whether appellee should be enjoined from constructing the crossing in question for the reason that as a foreign corporation it could not maintain a system of street railways or exercise its corporate functions in this State was not presented to the chancellor for his determination by appellant's bill.

Finding no error in the record the decree of the circuit court will be affirmed.

*Decree affirmed.*