Minnie Schwitters et al., Plaintiffs in Error, v. R. Magoon Barnes et al., Defendants in Error.

## Gen. No. 5324.

1. Pleading—*what essential to constitute paper bill in chancery.* A mere written motion is not the equivalent of a bill in chancery to set its machinery in motion. A bill in chancery must set up the facts upon which the relief is sought; it must pray for relief; it must have a party complainant and name parties defendant.

2. Parties—*who necessary to proceeding to appoint trustee.* Those having an interest in a trust, whether present or contingent, are necessary to a proceeding in a court of chancery to appoint a trustee as the successor of a testamentary trustee who has resigned.

3. Writs of error—*when cannot be maintained.* A writ of error does not lie except to review the action of the trial court with respect to litigation which has been conducted before it. Such a writ likewise must be sued out by a person who was a party to such litigation in the trial court.

Error to the Circuit Court of Woodford county; the Hon. J. H. Moffett, Judge, presiding. Heard in this court at the October term, 1909. Dismissed. Opinion filed October 18, 1910.

Livingston & Bach, for plaintiffs in error.

R. Magoon Barnes, *pro se.*

Mr. Justice Dibell delivered the opinion of the court.

On February 10, 1903, Dorothy Schwitters filed in the

office of the clerk of the circuit court of Woodford county a
paper, which read as follows:

"State of Illinois } ss.
Woodford County }

In Circuit Court
Of December Term 1903.

In the matter of the estate of Heiio Schwitters Deceased.

Now comes Dorothy Schwitters in her own proper person
and moves the court to appoint R. Magoon Barnes of Lacon,
Illinois, as sole trustee under the last will of her deceased
Husband, Heiio Schwitters, in place of James I. Kerr and
Frank I. Stubblefield and said Dorothy Schwitters, all of
whom have resigned and declined to act.

Her<br>
Dorothy Schwitters   X<br>
mark."

Witness S. H. Schwitters.

Thereupon, on the same day, a circuit judge signed a de-
cree and the same was filed in the office of the circuit clerk.
The decree recited that on that day Frank A. Stubblefield and
Dorothy Schwitters, executors of the last will of Heiio
Schwitters, deceased, came into court and presented a cer-
tified copy of said will and proof that the same had been duly
admitted to probate by the county court of Woodford county.
The decree then sets out said will. The testator therein gave
all his real and personal estate to his wife, Dorothy Schwit-
ters, and to Frank A. Stubblefield and James I. Kerr, as
trustees, to pay off his debts, to pay his wife the income dur-
ing her life, unless she should marry again, and if she mar-
ried again, then to pay her one-half of said income for the rest
of her life, and to invest the other half thereof. The will
required the wife to pay the taxes and keep the buildings on
the real estate in repair. It made her the guardian of the
children until she married again and, at her death, or re-
marriage, made Stubblefield and Kerr guardians. It re-
quired the wife to maintain and educate the children until
they were twenty-one years of age and also to maintain the
mother of the testator. It required the wife, out of said

income, to pay each child $600 when he or she attained the age of twenty-one years, but if the wife married again, any child thereafter coming of the age of twenty-one years should receive said sum of $600 out of the one-half of the income not given to the wife. The will directed that, upon the death of the wife and the youngest living child reaching the age of twenty-one years, then the trustees should divide the testator's property *pro rata* among his children, giving to the lawful issue of a deceased child a parent's share, and this should be done either by converting all the estate into money or by dividing it without converting it into money. The will gave the trustees authority to sell any or all of testator's real or personal estate at public or private sale and to invest the proceeds, or to lease the real estate, as they deemed best. The trustees were also made executors, and their compensation, as executors, trustees or guardians, was fixed at $50 per annum each for Stubblefield and Kerr, or $100 for one if the other did not qualify. The decree found that the estate, exclusive of the trusts named in the will, was ready for final settlement. It recited that Dorothy Schwitters and Stubblefield and Kerr declined to act as trustees under the will. It was thereupon decreed by the circuit court that it now assumed jurisdiction of said trusteeship; and on said motion of Dorothy Schwitters, it was decreed that R. Magoon Barnes be appointed as trustee to execute the trusts named in said will, to rent and control the real estate left by the testator and also that purchased by the executors subsequent to his death, and to loan out the moneys on hand, to collect the income from the estate and to pay the same to Dorothy Schwitters during her life or until she shall remarry, and, if she remarries, to pay her one-half of the income, and to cause her to pay the taxes and keep the buildings in tenantable condition. The decree further ordered Kerr and his wife, Stubblefield and his wife, and Dorothy Schwitters to convey the real estate, amounting to 360 acres, to Barnes as trustee. It was further decreed that, upon the death of Dorothy Schwitters and when the youngest living child became twenty-one years of age, the trustee should further execute the trust

by sale and division of the proceeds, or partition in fact, of the lands therein described. The decree found that the executors had in hand $1,452.13, to be paid to the trustee, and it directed that the trustee give bond in the sum of $3,000 conditioned for the faithful discharge of his duties as trustee; and the court reserved the right to increase or diminish said bond and required that the trustee, before selling the real estate, should give another bond. The decree also approved a bond then presented by the trustee and directed the executors to pay over said money to said trustee.

It seems to be claimed that with the motion of Dorothy Schwitters, above set out, was filed a complete transcript of the proceedings had in the county court. This cannot be so, for the transcript so filed shows that a certified copy of the foregoing decree of the circuit court, showing the appointment and qualification of Barnes as trustee, was presented to said county court in the matter of said estate and that the executors were then ordered to pay Barnes as trustee $1,452.13, and that they thereafter reported to the court that they had paid said sum and exhibited the receipt of Barnes therefor, and that the county court thereupon found the administration of the estate fully settled and entered an order discharging the executors, except as to the execution of the said trusts. The transcript therefore must have been filed after the decree was entered, and when the decree was entered the only paper on file having any pretense to be called a pleading was said written motion of Dorothy Schwitters. But if said transcript had been filed before the decree was entered it did not aid in conferring any jurisdiction on the circuit court. There had been no appeal from any order of the county court, and there was no authority of law to file a certified copy of its proceedings in the circuit court; and the only office that transcript could perform was as documentary evidence upon a hearing. Thereafter the trustee filed a number of reports from year to year, and the circuit court from time to time entered a rule upon all parties in interest to file objections to said report by a given time, and, after that time had passed, approved the report. In 1909, Minnie, Mary

and Christopher Schwitters, claiming to be minors, by their next friend, sued out from the Supreme court a writ of error against Barnes the trustee, and against George Schwitters, Sophie Yerk, Schwittert Schwitters, Dorothy Schwitters and John H. Schwitters, all of whom, except Barnes and Dorothy Schwitters, we are asked to assume are other children of said testator. Barnes moved to dismiss the writ of error, and, upon a consideration of that motion, after John H. Schwitters had been changed to a plaintiff in error, that court found that no freehold was involved and that that court did not have jurisdiction, and it directed the cause to be transferred to this court, which was done. Schwitters v. Barnes, 243 Ill. 493.

This was not a suit at law, nor a proceeding under any statute. If maintainable, it was a cause in chancery, brought for the appointment of a successor to testamentary trustees, and to control and enforce the execution of testamentary trusts affecting real and personal estate. It seems to be seriously argued that the brief paper set out at the commencement of this opinion was a bill in equity. It is obvious that it was only a written motion. It is said it contained a prayer. That may be said of every motion. We are led to inquire what is necessary to be done in order to institute a suit in equity. Section 1 of the Chancery Act authorizes the circuit courts to proceed as in that act prescribed and, where no provision is made in that act, then according to the general usage in courts of equity. Section 4 enacts that the mode of commencing suits in chancery shall be by filing a bill of complaint with the clerk of the proper court, setting forth the nature of the complaint. Various sections of that act show that the suit is to have one or more complainants, who prosecute the suit, and one or more defendants, and require the issue and service of process or notice upon every defendant as therein prescribed. Section 7 of Story's Equity Pleading shows that the complainant must file a bill in equity and set forth material facts and pray for appropriate relief and for the usual process against the other parties in interest. In Helm v. Cantrell, 59 Ill. 524, it is held that every fact

essential to the plaintiff's title to maintain the bill and to obtain the relief must be stated in the bill, otherwise the defect will be fatal, and that relief cannot be granted for matters not charged in the bill. In Dickey v. Reed, 78 Ill. 261, it is said there are several things which are indispensable to enable the court to hear, to determine, and to decree; and, among other things specified is that there must be a complainant who must file a bill, alleging facts showing that he has an interest in the matter in litigation, or at least to complain and have relief for others. In Campbell v. Powers, 139 Ill. 128, the court said: "Every bill must contain sufficient matters of fact per se to maintain the case, so that the same may be put in issue by the answer and established by proofs." In J. H. Rice Co. v. McJohn, 244 Ill. 264, the court said: "No facts are properly in issue unless charged in the bill, and no relief can be granted for matters not charged. The averments of a bill and the decree must correspond. It is fundamental that a party must stand or fall by the case made by his bill." In C. P. & St. L. Ry. Co. v. Jacksonville Ry. & Light Co., 245 Ill. 155, it was held that a decree cannot give relief which the evidence would warrant, where there are no averments in the bill to which the evidence can apply, and that the complainant must stand or fall with the case made by his bill. In Windsor v. McVeigh, 93 U. S. 274, 283, the court said, by way of illustration: "The decree of a court of equity upon oral allegations, without written pleadings, would be an idle act, of no force beyond that of an advisory proceeding of the chancellor; and the reason is that the courts are not authorized to exert their power in that way." In Kerfoot v. People, 51 Ill. App. 409, the court said: "A court of chancery cannot obtain jurisdiction, save by the filing of written pleadings, and the extent of the jurisdiction of the court in the case under consideration is determined by the contents of the pleadings." In the case at bar, there was no bill stating facts which would authorize a court of equity to appoint a trustee to take control of the estate and to retain the estate within its control till the period of final distribution, and to direct and control that final distribution. There

was also no prayer for relief. If it be said that Dorothy Schwitters might be considered a complainant, no one was named as a defendant. The children of Heiio Schwitters, deceased, who are finally to receive this estate are not even named anywhere in the proceedings before us. The decree recites that Dorothy Schwitters and Stubblefield appeared and refused to act. That did not make Stubblefield a defendant nor give him an opportunity to be heard in the manner prescribed by the practice in courts of equity. But Kerr also was ordered, with his wife, to make a deed, and they did not even appear. It is said that Kerr had refused to act as trustee in the county court. The county court could relieve him from the duty of administering the estate in that court, but it could not accept his resignation as trustee. This action was taken long before the Act of June 14, 1909, extending the jurisdiction of probate and county courts so as to include testamentary trusts. It is argued that Dorothy Schwitters and Stubblefield, being the widow who was entitled to the income and the two trustees who had not originally declined to act, are all the parties in interest, and that however irregular the procedure may have been, no one else can complain. The basis of this argument is the fact that under the will those children only will take who arrived at the age of twenty-one years and those only are interested in the final distribution who may be then living or who have lawful issue then living, and the assumption that therefore the present interests of the children are contingent only. We are of opinion that whatever name may be applied to the present interests of the children, they are necessary parties in a proceeding to appoint a trustee, the very purpose of which is to protect their estate. Chapin v. Nott, 203 Ill. 341; Ohio Coal Co. v. Daughetee, 240 Ill. 361. If the position contended for here by Barnes is sound, then the testamentary trustees and the widow can by collusion absorb the entire estate, and the children of the testator would have no standing in a court of equity to protect themselves. But the supreme court in this very case (Schwitters v. Barnes, *supra*), decided that the children of the testator have a right to a voice in the appoint-

ment of a trustee. We are of opinion that the decree and subsequent orders embodied in the record before us are *coram non judice* and void. There has been no suit in equity involving this estate, and the orders entered in the court below have been without jurisdiction. It is manifest that great mischief and confusion would result from the adoption of a rule of practice that would permit a party on a mere motion in a court of equity, without any pleading or notice to opposite parties, to dispose of important financial interests in an estate like this. This proceeding violates the fundamental principle that courts may not dispose of the rights of any one without notice pursuant to law and a hearing.

But, if we are right in sustaining the position of plaintiffs in error that there is not and has not been any suit in equity pending in the court below, nor any parties named there, by what authority can these void proceedings be reviewed in this court on a writ of error ? In section 8 of the Appellate Court Act the appellate courts are given jurisdiction of appeals or writs of error from the final judgments, orders and decrees of the circuit court "in any suit or proceeding at law or in chancery, other than criminal cases not misdemeanors, and cases involving a franchise or freehold or the validity of a statute." Section 16 of said Act authorizes the writ of error to be taken to the appellate court in the district "in which the case is decided." Similar language in sections 118 and 120 of the Practice Act shows that writs of error relate to cases in the court below. In Suydam v. Williamson, 20 How. 427, the court said: "A writ of error is an original writ and lies only when a party is aggrieved by some error in the foundation, proceedings, judgment or execution of a suit in a court of record." The definitions of a writ of error in the text books show that it is a writ to review the final judgment or decree of an inferior court in a suit or action brought before it. We do not suppose, that, if a judge voluntarily chooses to cause to be inscribed upon the records of his court matters not involved in any suit brought in his court or pending before him, and to which record no one is named as a party, such matters can be reviewed by writ of error sued

out by some one not named in the record sought to be reviewed.

The plaintiffs in error on this record are Minnie, Mary, Christopher and John H. Schwitters. The defendants in error are Barnes as trustee, George Schwitters, Sophie Yerk Schwittert Schwitters, and Dorothy Schwitters. The record before us contains the names of Barnes and Dorothy Schwitters. In one of the reports there is shown the payment of $600 to John Schwitters, therein recited to be a son of Heiio Schwitters, deceased. The reports contain the name of Schwittert H. Schwitters, a tenant. We have no means of knowing that he is the same person as Schwittert Schwitters, defendant in error; indeed the record justifies the inference that these are different persons. The rest of the plaintiffs in error and the defendants in error are not named anywhere in this record, so far as we can find. In the will the testator did not give the names of his children. We find among the papers in this court a *præcipe* for a writ of error. It declares that a decree was obtained in the court below against Minnie, Mary, Christopher, John H., George, Dorothy and Schwittert Schwitters and Sophie Yerk. No such decree is contained in this record. We cannot know that the parties named are the the children of the testator, nor that they are all his children. Even the *præcipe* for a writ of error does not allege that these are children of the testator, nor that they are all the children of the testator. We are of opinion that there is nothing in the record before us which shows that plaintiffs in error have any litigation pending, nor anything which shows that all persons interested are before the court. We conceive that if plaintiffs in error are children of the testator, their remedy is not by a writ of error to review a record in which they are not named and with which there is nothing to identify them. We are of opinion that they should have brought an original suit in equity in the circuit court, either to charge Barnes as trustee *de son tort,* or in some appropriate way to bring the control of said trust estate within a court having jurisdiction, and should have made parties thereto all persons in interest. This would have included all the children of deceased, and

the widow, and Barnes, and also Stubblefield and Kerr, who have never resigned their positions as trustees to any court having jurisdiction to act thereon. When such a suit is heard, after jurisdiction obtained and issue formed, it does not necessarily follow that Barnes will be removed from the trusteeship. If the resignation of Dorothy Schwitters, Stubblefield and Kerr, shall be accepted by a court so having jurisdiction, and if it shall be found that Barnes was a suitable person to be a successor in trust, and that he had in all things acted pursuant to the directions of the will and in entire good faith, and that he had well preserved the interest alike of all the parties, it may be that the court in its discretion would approve his acts and make him a lawful trustee.

The writ of error is therefore dismissed, without prejudice to the right of the plaintiffs in error to seek other redress.

*Dismissed.*