Ingle v. Bottoms.

---

## Ingle v. Bottoms.

[No. 19,985. Filed February 6, 1903.]

EASEMENTS.—*Grant.*—Where a grant is made, whatever is necessary or essential to the enjoyment of the grant is also granted. *p. 78.*

MINES AND MINERALS.—*Rights of Lessee.*—A grant of the right to the coal under the surface of certain real estate carries with it as a necessary incident the right not only to penetrate the surface of the soil for coal, but also to use such means and processes for mining and removing the coal from the premises as may be reasonably necessary. *p. 79.*

SAME.—*Lease.*—*Right to Construct Railroad Switch to Mine.*—A mining lease granting to the lessee the right to enter upon the lands described for the purpose of mining coal, and of conducting and operating to any extent he may deem advisable, but not to hold

possession of the land "for any other purpose, except one acre, more or less, for operating the mines, and for dwellings," gives by implication the right to construct a railroad switch for the purpose of transporting the coal, and otherwise operating the mine. *pp. 79, 80.*

CONTRACT.—*Mining Lease.*—*Mutuality.*—A coal mining lease which provides that the mine shall be opened within one year from the date of the lease, and shall not be closed down for more than a year at a time; that the lessor shall receive 500 bushels of coal each year and a certain sum of money for each ton of coal mined, is enforceable by the lessor, and, therefore, not invalid for want of mutuality. *pp. 80, 81.*

INJUNCTION.—*To Prevent Lessor from Interfering with Operation of Mine.*—An injunction will lie to prevent the interference by the lessor with the construction of a railroad switch to a coal mine. *pp. 81, 82.*

From Pike Circuit Court; *E. A. Ely,* Judge.

Suit by David Ingle against William H. Bottoms. From a judgment for defendant, plaintiff appeals. Transferred from Appellate Court, under §1337u Burns 1901. *Reversed.*

*J. E. Iglehart* and *Edwin Taylor,* for appellant.
*E. P. Richardson* and *A. H. Taylor,* for appellee.

MONKS, J.—Action by appellant against appellee. The complaint was in two paragraphs. The first was to enjoin appellee, lessor in a coal mining lease, from interfering with the construction of a railroad switch which appellant, as assignee of the lessee, in possession of the mine, was attempting or about to build upon the surface of the land near the pit-head for the purpose of removing coal mined under the lease. The second paragraph was for injunction, the same as the first, and also for specific performance. Appellee demurred to each paragraph of the complaint for want of facts, which demurrer was sustained. Appellant refusing to plead further, judgment was rendered against him.

The errors assigned call in question the action of the court in sustaining the demurrer to each paragraph of the complaint.

It is averred in the first paragraph of complaint that appellee, the lessor, owned forty acres of land, describing it; the execution of the lease on the 24th of August, 1898, the lease being set out *in haec verba;* that the lessee "entered upon said land under said lease, and constructed a mine thereon, and has since said time mined coal from said mine, and for the purpose of reaching said mine procured the Southern Railway Company to construct a switch from its main line to a point near said mine, so as to connect said mine with a railroad switch, which is necessary for its proper operation;" that it has become necessary, in the operation of the mine by the appellant under the lease, to build the switch; that the route selected is upon the line of a watercourse which already cuts the defendant's land in two, and the building of the switch will do the appellee and his land the least possible damage; that appellee is objecting to the extension of the switch, and will, if not enjoined, interfere with and obstruct the building of it, and annoy and obstruct the men whom the plaintiff is about to put immediately upon the work; that the appellant can not build the switch without great annoyance and hindrance and interference, and, unless appellee is enjoined from interfering with the building of the switch, appellant will be unable to build the same, to his great loss and damage and irreparable injury; that the appellant has performed all the terms and conditions imposed on the lessee in the lease. Prayer for temporary restraining order and perpetual injunction, and all other proper relief.

In the second paragraph, in addition to the facts set out in the first paragraph, it is averred that the Southern Railway Company has extended its switch upon appellant's land to a point accessible to the pit-head of the mine on appellee's land; that the railroad switch is built upon appellant's land,—appellant owning the land on the west and north of the leased premises; that the pit-head is connected by a switch with the railroad switch already mentioned;

that it is impracticable for the appellant to build the switch extension upon his own land, for the reason that such a construction would involve a crossing of a watercourse, and a long and expensive bridge and trestle, at a cost wholly disproportionate to the value of the same, and so expensive as to be impracticable; and that it has become necessary to extend the switch on appellee's land so as to make room for cars handled in the ordinary course of business in the operation of said mine under the lease; that the route selected, as aforesaid, will carry the proposed extension over the surface not to exceed three acres of appellee's land, the entire value of which does not exceed $25 per acre, and that the same will lie upon the bank of a watercourse, and does the least possible and very small damage to the appellee's land; that appellant is entitled to the possession of the land for the purpose of extending said switch by the express terms of the lease and by necessary implication, in the proper operation of said mine, such extension being necessary to such operation; that appellee unlawfully excludes appellant from such possession, and further threatens to prevent such extension, and will, if not enjoined, interfere; that, unless he is enjoined from preventing the building of the switch upon the land sought to be occupied as aforesaid, appellant will be unable to build said extension, to his great loss and damage, and interference with and practically stopping the operation of the mine, the sale of coal, and employment of a large number of men, resulting in irreparable injury, for which appellant can not have as adequate remedy at law as in equity; that appellant has title to the said surface for the purpose of extending said switch, as aforesaid, both by express grant and necessary implication from the lease; that appellee unlawfully excludes the appellant from the possession; that appellant, by his title through the assignment of said lease from Jackson, has entered into possession of the mine under the lease, and the appellant, as Jackson's successor under the lease, has been

recognized by the appellee, who has dealt with appellant in and concerning the payment of royalty for the same from the appellant to the appellee, which has been done; that the lease has become thereby a binding contract between the parties thereto, fully performed by appellant, and that it ought to be enforced as to the appellee, including the portion authorizing appellant to use the said surface for the extension of the switch as aforesaid. Appellant alleged other facts, but, as they do not affect the sufficiency of the other allegations of said paragraph, it is unnecessary to set them out.

The part of the lease upon which appellant bases his right to recover under each paragraph, omitting the description of the real estate, is as follows: "The party * * * [of the first part], for and in consideration of the covenant and agreement herewith on the part of the party of the second part, and $1 paid to the party of the first part, the receipt whereof is hereby acknowledged, has granted and conveyed, and by these presents does grant and convey to the party of the second part, his heirs and assigns, the right of entering in and upon the lands hereafter described for the purpose of mining coal and of conducting and operating to any extent he may deem advisable, but not to hold possession of, said land for any other purposes, except one acre, more or less, necessary for operating said mines, and for dwellings. The said lands are situated in Pike county, in the State of Indiana, and described as follows, to wit [describing them], for the term of twenty-five years, or as much longer as the party of the second part may deem advisable, and for which the party of the second part hereby agrees and proposes to pay, or cause to be paid, to said party of the first part the following rents, to wit, the sum of two and one-half cents per ton of 2,000 lb. mine run coal and five cents per ton of 2,000 lb. lump coal to be screened over not more than one and three-quarter inch between screen bars, and

the said sum to be paid by the 30th of the following month for all coal mined the preceding month.   Except that the party of the first part agrees to allow the party of the second part the first year's royalty and rent on all coal mined free for opening said mines, commencing with date of this lease. Also said party of the second part agrees to commence and operate said mine or mines within one year from the date of this lease, or same shall become null and void; other- wise in full force.   And, further, that the party of the sec- ond part shall not become liable for any damages which may occur to said party of the first part by the sinking in of any part of said lands, and the party of the second part agrees not to mine the coal out from under the present resi- dence of the party of the first part.   And, further, that the party of the second part agrees that in any event should said mines be closed down for more than one year at a time from any other cause than strikes, this lease shall become null and void, otherwise in full force.   Also the party of the second part agrees to furnish the party of the first part 500 bushels of coal each year from the date of this lease." Signed by the appellee and his wife.

It is claimed by appellee that there is no ground for in- junction, or for specific performance, under the facts al- leged, because:   (1) There is a doubt as to the construc- tion of the contract; (2) that the injury may be fully com- pensated in damages.   It is well settled that when anything is granted, whatever is necessary or essential to the enjoy- ment of the grant is also granted.   *Dand* v. *Kingscote,* 6 M. & W. 174; *Marvin* v. *Brewster, etc., Co.,* 55 N. Y. 538, 558, 14 Am. Rep. 322; *Rankin's Appeal,* 1 Mona. (Pa. Sup. Ct.) 308, 16 Atl. 82, 2 L. R. A. 429; *Wardell* v. *Wat- son,* 93 Mo. 107, 111, 5 S. W. 605; *Williams* v. *Gibson,* 84 Ala. 228, 4 South. 350, 5 Am. St. 368; Bainbridge, Mines, 101, 102; 20 Am. & Eng. Ency. Law (2d ed.), 774. The rights which arise by implications under said rule are only such as are necessary to the enjoyment of the grant.

*Pettingill* v. *Porter,* 8 Allen 1, 85 Am. Dec. 671; Barringer, Mines, 589. Under this rule, the grant of the right to the coal carries with it, as a necessary incident, the right not only to penetrate the surface of the soil for the coal, but also to use such means and processes for mining and removing the same from the premises as may be reasonably necessary. This includes the right to construct such roads and railroad tracks on the surface of the land as are reasonably necessary for the transportation of supplies, machinery for the operation of the mine, and for removing the coal from the mine openings. Lindley, Mines, §813, and authorities cited, *supra.* The question of how much of the surface is reasonably necessary for the proper operation of the mine is a question of fact, and not of law.

It was said in *Pettingill* v. *Porter, supra,* concerning the meaning of the word "necessary" when used in defining what rights pass by implication, that: "The word 'necessary' can not reasonably be held to be limited to absolute physical necessity. If it were so, the way in question would not pass with the land if another way could be made by any amount of labor and expense, or by any possibility. If, for example, the property conveyed were worth but $1,000, it would follow from this construction that the plaintiff's intestate would not have the right of way over the triangular piece as appurtenant to the land, provided he could have made another way at an expense of $100,000. If the word 'necessary' is to have a more liberal and reasonable interpretation than this, the one adopted by the judge must be regarded as correct. Its effect was to require proof that the way over this triangular piece was reasonably necessary to the enjoyment of the dwelling-house granted. See *Ewart* v. *Cochrane,* 7 Jur. (N. S.) 925; *Leonard* v. *Leonard,* 2 Allen 543; *Carbrey* v. *Willis,* 7 Allen 364."

Appellee insists, however, that appellant is, by the terms of said lease, restricted to the use of one acre, more or less, of said land, for the purpose of mining said coal, conduct-

ing and operating said mines. The lease grants to the lessee the right to enter "upon the lands * * * for the purpose of mining coal and of conducting and operating to any extent he may deem advisable, but not to hold possession of said land for any other purpose, except one acre, more or less, for operating said mines and for dwellings."

It will be observed that the limitation of the right to hold possession of the land to one acre, more or less, is a limitation for other purposes than those previously recited. It is true that the words "for operating said mines," which specify the use to be made of said one acre, more or less, designate a purpose expressly granted by the lease. This renders the meaning of said clause somewhat obscure. The rule is that a lease must be construed as a whole, and such construction placed upon it as will render all of its clauses harmonious, consistent, reasonable, and just, and mutually obligatory in its provisions. Exceptions are construed against the lessor and in favor of the lessee. 18 Am. & Eng. Ency. Law (2d ed.), 617, 618, 624; 17 Am. & Eng. Ency. Law (2d ed.), 4-8, 18; Gear, Land. & Ten., §68. Applying these rules to the lease in question, it is evident that the restriction of the possession for "other purposes" to one acre, more or less, can not be held to limit the lessee's use of the surface for switches and roads to less than is reasonably necessary for the removal of the coal from said mines. To construe the reservation as controlling the entire lease, and limiting the right expressly granted, and those which would be necessarily implied in order to effectuate the purposes of the grant, would, under the allegations of the complaint, be practically to destroy the lease, and prevent appellant from carrying out the true purpose of the same by mining all the coal under the land in a businesslike manner, and paying to appellant the royalty which would thereby come to him.

Appellee insists that the lease can not be enforced against the appellant, and for that reason it lacks mutuality, and

can not be enforced against him. The lessee is required by the contract to furnish the lessor 500 bushels of coal each year from the date of the lease, and pay a fixed price for the coal taken from the mines, and that he open up the mine or mines within one year from the date of the lease, and that said mines shall not be closed down for more than one year at a time from any other cause than strikes; all of which terms and conditions, it is alleged, have been performed by appellant. It is evident that the terms of said lease could have been enforced by appellee. There is no doubt as to the proper construction of said lease.

It was said by this court in *Xenia Real Estate Co.* v. *Macy,* 147 Ind. 568, 573: " 'That a remedy which prevents a threatened wrong is in its essential nature better than a remedy which permits the wrong to be done, and then attempts to pay for it by pecuniary damages which a jury may assess.' *Denny* v. *Denny,* 113 Ind. 22, was an action brought by a widow to enjoin the executor from selling corn which she claimed the right to take as such widow at its appraised value, an injunction was granted by the trial court. This court in affirming the judgment said: 'If it may be conceded that the plaintiff might have maintained a suit on the bond, it does not necessarily follow that she must have permitted the corn, to which she had a clear right, to be sold. She was not bound to take the chance of obtaining other corn or leaving her animals to suffer for want of feed. * * * It is not enough that she had a remedy at law; it must be plain and adequate, or, in other words, as practical and efficient to the ends of justice, and its prompt administration, as the remedy in equity.' " *Peoria, etc., R. Co.* v. *Attica, etc., R. Co.,* 154 Ind. 218, 223.; *Champ* v. *Kendrick,* 130 Ind. 549, 553; *Bishop* v. *Moorman,* 98 Ind. 1, 49 Am. Rep. 731; *Erwin* v. *Fulk,* 94 Ind. 235; *Allen* v. *Windstandly,* 135 Ind. 105, 109. Under this rule it is clear from the facts alleged in each

Vol. 160—6

paragraph of the complaint that appellant has no complete and adequate remedy at law. The facts alleged were, therefore, sufficient to entitle him to an injunction. *Xenia Real Estate Co.* v. *Macy, supra.*

This disposes of all the objections urged against the complaint. It follows that the court erred in sustaining the demurrer to each paragraph of complaint.

Judgment reversed, with instructions to overrule said demurrer, and for further proceeding not inconsistent with this opinion.