DETERMINED IN THE

## FOURTH DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

### DURING THE YEAR 1920.

---

### *Continental Clay Company, Appellee, v. Illinois Kaolin Company and A. A. Fasig, Appellants.

1. APPEAL AND ERROR—*sufficiency of record to present time of entry of decree.* Where the record on appeal shows that a decree was regularly entered, error cannot be assigned, in the absence of an addenda to the record, that it was not entered or recorded in term time.

2. EQUITY—*opening case for further evidence.* The court may reopen a case to receive evidence where the decree, while it has been granted, has not yet been placed on the record.

3. EQUITY—*rebutting evidence where case opened on motion of adverse party.* Where in a suit by the owner of fire clay rights in land to compel the removal of an embankment placed on the land by the owner of the fee in the land who was also mining for clay on adjoining land, the court opened the case on motion of complainant to permit further evidence as to the location of the embankment, it was error to exclude evidence offered in behalf of defendant to show that there was no fire clay in the land at the point covered by the embankment.

4. MINES AND MINERALS—*implied rights as to ingress and egress.* Where a conveyance of clay rights in land granted a right for a "wagon or cart road" leading from the highway to the place of digging the clay, such grant did not restrict the rights of the

---

* This case was not received by reporter until October, 1924.

grantee to build such road, but it had the right to other and different means of exit to and from the premises in the necessary or economical and profitable management of the clay banks, pits or mines.

5. EQUITY—*conformity of findings to allegations.* It is a fundamental rule of equity pleading that the allegations of the bill, the proof and the decree must correspond, and it is error to make findings, which, though supported by the evidence, have no basis in any allegation of the bill.

6. MINES AND MINERALS—*surface rights of grantee of mining rights.* The owner of a mining right is limited in his surface rights to such use of the surface as is reasonably necessary to mine and carry away the minerals.

7. INJUNCTION—*what parties not improper.* In an action by the grantee of a mining right to enjoin interference with operations under the grant, a lessee of the grantee is not an improper party.

8. MINES AND MINERALS—*rights of grantee of mineral rights.* A deed conveying clay rights in land gives the grantee possession coextensive with the boundaries of the land described in the deed with the right to prospect for clay.

9. INJUNCTION—*when defendant not entitled to complain of cost of compliance with mandatory decree.* In a suit by the owner of clay rights in land to enjoin interference with the exercise of such right by the owner of the fee, also mining for clay on adjoining land, by an embankment of waste matter located between both a railroad and highway and a large portion of the lands wherein complainant owned the clay rights, held, that where a mandatory injunction only required the removal of the portion of the embankment placed on the premises after the bill was filed the defendants could not be heard to complain of the excessive cost of the removal thereof if they placed waste matter in such place as to interfere with the rights of complainant after suit was begun.

10. INJUNCTION—*when remedy at law inadequate.* In an action by the owner of clay rights in land to enjoin interference with the exercise of such right, held, in view of the scope and nature of the litigation and the necessary construction of the instruments under which the parties claimed title, that a suit at law would have been wholly inadequate.

Appeal by defendants from the Circuit Court of Union county; the Hon. LOUIS BERNREUTER, Judge, presiding. Heard in this court at the October term, 1919. Reversed and remanded. Opinion filed March 25, 1920. Rehearing denied November 5, 1920.

Underwood & Smyser and C. R. Young, for appellants.

Thomas E. Gillespie and C. E. Feirich, for appellee.

Mr. Justice Eagleton delivered the opinion of the court.

In 1846, one Caleb Rendleman, being the owner of seventy-seven acres of land in Union county, Illinois, executed a deed conveying, ''the full and exclusive right and title to all the potter's clay and fire clay of whatever kind in or within the boundaries'' thereof and which said deed contained the following additional grant: ''together with the right and privilege of an unobstructed wagon or cart road leading from the Jonesboro and Murphysboro road to the place of digging the clay and also the right and privilege of cutting and using all the timber necessary for curbing, bridging and passing clay in and about the pits, and also the right to remove all of the soil or dirt necessary for getting at the clay with the right to deposit all earth or clay so taken out on the most convenient places, to facilitate the getting out of said clay.''

By mesne conveyances, the Continental Clay Company, the appellee, on the 2nd day of April, 1917, became the owner of all interest and title under said deed, which interest will hereinafter, for convenience, be referred to as clay rights. The conveyance to the appellee was made subject to the right of one John I. Toler and his successor to purchase as much as 150 tons of clay per year at the pit at cost price.

On April 16, 1917, the appellee entered into a contract with one Frederick A. Bausch, who is not a party to this suit, in which Bausch was given the exclusive right to mine and remove the plastic crucible fire clay from a strip of land 600 feet wide, extending east and west from near the east line of said tract of land to

the west boundary thereof for a term of one year from the date thereof with the privilege to renew said contract for a like term upon giving notice as therein provided. In that contract, it was expressly set forth that Bausch was to have all privileges and rights with reference to said strip granted in the deed from Rendleman. Bausch agreed to pay to the appellee as a royalty $7.50 for each ton of clay mined and removed by him. Several years prior to the beginning of this suit, the Illinois Kaolin Company, one of the appellants, was the owner of a tract of land adjoining said seventy-seven acres on the west and southwest sides in which there were deposits of clay which said appellant had been mining for some time prior to the purchase of said clay rights by the appellee.

Some years before the beginning of this suit, said appellant had become the owner of fifty-five acres of said seventy-seven acre tract, subject to said clay-rights. A portion of the fifty-five acre tract was covered by the contract between the appellee and Bausch.

Crucible clay is found on the lands mentioned in bowl shaped deposits varying in size, at depths of from twenty-five feet to forty feet below the surface of the earth.

One of the methods of mining this clay is by removing the earth and waste materials and taking the clay therefrom by shovels and is called the "stripping process." Shafts also are, or could be, used.

The appellant, Illinois Kaolin Company, had been mining clay by the stripping process on said land adjoining said seventy-seven acre tract, and in carrying on said operations had constructed trestles and a track over which it hauled the dirt and waste matter removed by it and dumped the same on the surface of the ground along said trestle. After the purchase of said fifty-five acres, the trestle and track were extended to and along a portion of said fifty-five acres which was included in the contract with Bausch.

After so extending the trestle and track and before the appellee became the owner of the clay rights in said seventy-seven acre tract, said appellant had deposited a large amount of dirt and waste materials removed from its clay mines along said trestle on said portion of said lands thereafter leased by the appellee to Bausch.

The Mobile and Ohio Railroad runs along the east side of seventy-seven acre tract of land and east of said tract of land whereon said appellant was mining and said appellant before the appellee became the owner of said clay rights erected a large shed located partly on said fifty-five acre tract, which is used by it for the storage of its products. From this building, a switch track extends to said railroad.

The original bill was filed June 5, 1917, against said appellant as sole defendant and summons was served the next day. An amended bill was thereafter filed making said appellant the sole defendant. On November 16, 1917, an amendment to the bill was filed making the appellant, A. A. Fasig, a party defendant thereto.

In the amended bill on which the case was tried, the appellee set forth its title to said clay rights as above recited, that it had located large quantities of clay on various portions of said land and had caused one large pit to be dug for the purpose of mining clay therefrom and had caused a gravel road to be constructed from said pit to the Mobile and Ohio Railroad and the Jonesboro and Murphysboro road both of which were located on the easterly side of said lands; that to the south of said pit is low ground which affords the most convenient place for it to deposit waste materials removed in its mining operations; that the outlet for removing its clay is over the Mobile and Ohio Railroad; that the only wagon road available is the Jonesboro-Murphysboro road; that it is the intention of the complainant to prospect said premises for clay and to mine and remove it and

that it believes there are available deposits of potter's clay on various portions of said premises including that portion whereon said appellant has constructed said embankment. It is also charged in the bill that said appellant, Illinois Kaolin Company, had constructed trestles etc. and deposited waste materials on said premises making an embankment thereon 50 feet high, 75 feet wide at the top, 400 feet wide at the bottom, and 1,200 feet long, which embankment was located between said railroad and said wagon road and a large portion of said lands wherein the appellee owned the clay rights and on available deposits of fire clay owned by the appellee. That shortly after appellee obtained title to said clay rights it notified the appellant, Illinois Kaolin Company not to further extend the trestle and embankment on the land wherein appellee owned the clay rights and that notwithstanding said notice said appellant had caused the same to be extended 40 feet and threatens to continue the same further. It is also alleged in the bill that said trestle and embankment are located on said low ground.

In addition to the above are various charges of interference with the appellee in its mining operations among which is the charge against the appellants of removing certain grade stakes, etc., established and placed by the appellee in preparation for mining. In addition to a special prayer, there was a prayer for general relief.

The appellant, Illinois Kaolin Company, filed an answer to the bill in which it admitted the ownership of the adjoining premises and that it mined clay thereon and that it constructed the trestle and track thereon and the building as charged in the bill and deposited waste materials as charged in the bill, that it owned said fifty-five acres of land and that a pit was dug on the lands in controversy by one Bausch and that there is low ground to the south and east of said pit whereon it deposited waste materials taken

out in clay mining on said adjoining land, all of which it claimed the right to do under its title to said portion of said lands. In said answer, said appellant disclaims all knowledge as to the intention of the appellee to prospect for clay and denies that the appellee acquired title to said clay and denies all the other material allegations in the amended bill.

On March 27, 1918, the appellant, Fasig, filed an answer in substance the same as the answer filed by the Illinois Kaolin Company. Replications were filed and evidence heard in open court. Later, amendments were filed to the answers of the appellants in which they alleged that the appellee had a remedy at law.

At the conclusion of the evidence, the court made a memorandum of its findings, one of which was marked "G," in which the court found that the appellants had deposited waste materials as charged in the amended bill and further found, "but from the evidence herein, the court is unable to definitely define the extent or amount so as to fix, limit, or properly describe the extent or amount, and on this portion of the prayer, for injunction, the court makes no order and enters no decree as to its removal."

On April 29, 1918, the court ordered that a decree be entered in accordance with its findings.

This decree was not prepared at that time and the cause was continued generally by the clerk.

At the June Term, 1918, of the court, the appellee filed a motion to open up the case and for leave to introduce further evidence to make more definite proof of the "location of the trestle works, dirt, clay, and other waste materials placed upon the premises by the defendants since the filing of the suit and since notice to desist." This evidence was to supply the proof as to the matters involved under item "G" of the court's findings at the former term.

The appellants resisted the motion but the court granted the motion and opened up the cause for the purpose stated.

Continental Clay Co. v. Illinois Kaolin Co. et al., 232 Ill. App. 596.

Thereafter the cause was regularly continued from term to term until the March Term, 1919, at which time the court heard the evidence offered by the appellant and the court found the location of the embankment.

On this hearing, the appellants called witnesses and offered to prove by them that the portion of said premises whereon the embankment was located had been tested and that there was no clay of the character mentioned located thereon. This was objected to by the appellee and the objection sustained.

An objection that strikes at the validity of the decree is made by the appellant in an error assigned and discussed that the decree was not entered or recorded in term time. The position of the appellant on this question must be supported by a so called "addenda" to the record or it must fall. As the record proper shows, the decree was entered on the 2nd day of April, 1919, which was one of the judicial days of the March Term, 1919, of the court. The appellant entered a motion in this court for leave to file an amendment to the record but that motion has been denied, and the amendment to the record cannot be considered in this cause. Inasmuch as the decree appears from the record, as now before the court, to have been regularly entered, the position of the appellants cannot be sustained.

The ruling of the court in opening up the case for further evidence and its ruling on refusing to admit said evidence offered by the appellants are assigned as error.

As to the first proposition, it appears that while a decree had been granted by the court it had not yet been placed on the record. The ruling of the court on this proposition is sustained on the authority of *Washburn & Moen Manufacturing Company v. Chicago Galvanized Wire Fence Co.*, 119 Ill. 44, and Daniel's Chancery Pleading and Practice (Perkins' Edition), page 854.

As to the other proposition, the embankment on the premises was the main issue in the case. On that issue from the evidence before it, the court was unable to determine the rights of the parties and on request of the appellee the court heard additional evidence for the purpose of locating the trestle and embankment. Under the issues and the former finding of the court, it was entirely proper for the appellants to show there was no clay of the character claimed by the appellee on the particular part of the land whereon the evidence showed the embankment was located and the court erred in refusing to admit the evidence offered by the appellants on that question.

In its findings, the court found that the grant of the right for a "wagon or cart road," in the deed from Rendleman did not restrict the rights of the appellee to build such road, but that it had the right to other and different means of exit to and from said premises in the necessary or economical and profitable management of said clay banks, pits or mines.

This is objected to on the ground that this necessitated a construction of the grant from Rendleman and inasmuch as that question was not presented by the bill, that the court erred in construing the instrument. It is also urged that by the language used in the original conveyance the rights of the appellee are limited to those expressly granted.

As to the first objection, the appellee in its bill alleged that it had caused to be constructed and repaired a gravel roadway extending from a certain pit on the premises across a portion of said premises to the Mobile and Ohio Railway and to the Jonesboro and Murphysboro road. There was some evidence tending to show that the location of the Jonesboro and Murphysboro road had been changed since the deed was made from some distance west of the railroad to a point east thereof. Under these conditions, it was not improper for the court to determine the

right of the appellee to construct a road at the place mentioned.

This being true, the question then arises as to the effect of the specific grant of a right of way in the conveyance by the owner who severed the estates.

"An express grant of all the minerals or mineral rights in a tract of land is, by necessary implication, the grant also to open and work the mines, and occupy so much of the surface as may be reasonably necessary for such purpose; and this implied right to occupy so much of the surface as may be needed to open and work the mines is not limited, but rather strengthened, by the special grant of certain timber and water privileges, and of the right of way to and from the mines." Ruling Case Law, Vol. 18, p. 1156, sec. 66; *Williams v. Gibson,* 84 Ala. 228; *Ingle v. Bottoms,* 160 Ind. 73; *Ewing v. Sandoval Coal & Mining Co.,* 110 Ill. 290.

In *Ingle v. Bottoms, supra,* in considering a mineral lease, the Supreme Court of Indiana held:

"It will be observed that the limitation of the right to hold possession of the land to one acre more or less is a limitation for other purposes than that previously recited. ————To construe the reservation as controlling the entire lease and limiting the right expressly granted ————— would ————— be to practically destroy the lease and prevent appellant from carrying out the purpose of the same." To the same effect is the case of *Williams v. Gibson, supra.*

From these authorities, the rule must be deduced that an express grant of an easement in an instrument granting the right to mine will only be held to exclude an implied right when clearly expressed in the instrument or when it clearly appears from a construction of the whole instrument that such was the intent of the grantor. It follows that the grant of the right of way in the conveyance under consideration not being expressed as being granted to the exclusion of all other rights of way and it not appearing from a

606    Appellate Courts of Illinois.

Continental Clay Co. v. Illinois Kaolin Co. et al., 232 Ill. App. 596.

consideration of the grant that such was the intention, the trial court did not err therein.

The trial court found that the Mobile and Ohio Railroad Company refused to build a railroad switch over the land in question to the mine, thereon, without first having the fee simple title thereto, and that the appellant, Illinois Kaolin Company, refused to convey the surface for that purpose. The court also found that the appellee has the right under its title to install all necessary and reasonable railroad switches for the usual successful and economical operation of its business of mining clay and that railroad switches are reasonably necessary. Likewise, the court found that the use of an overhead tramway and trestle to support the same from the double shaft being located by Bausch to the shed and switch track located on said railroad were reasonably necessary for the economical use of the premises for mining clay.

The objection made to these findings is that there is no allegation in the amended bill on which to base either of them. In support of this position the case of *Chicago, P. & St. L. Ry. Co. v. Jacksonville Ry. & Light Co.,* 245 Ill. 155 is cited by the appellants wherein it is held:

"As we have frequently stated heretofore, it is a fundamental rule of equity pleading that the allegations of the bill, the proof and the decree must correspond, and that the decree cannot give relief which facts disclosed by the evidence would warrant, where there are no averments in the bill to which the evidence can apply; * * *. A party cannot make one case by his bill and another and different one by his proofs. He must stand or fall with the case made by his bill." This authority is squarely in point on these holdings and under it they cannot stand. There are no allegations in the amended bill on which to base them. While the facts on which they are based may and to some extent at least appear in the certificate of evidence, there was no allegation in the bill whereon

to base either of the findings and it was error to make them.

The court found that under the deed in question the right, "to remove all of the soil and dirt necessary for getting at the clay with the right to deposit all the earth or clay so taken out at the most convenient places to facilitate the getting out of said clay," gave the owner of said rights the power, judgment and discretion of determining the site or location of the "most convenient places" the same to be exercised by the said owner in a reasonable manner.

It cannot be said that these findings are obnoxious to the objection that they did not come within the allegations of the bill for the reason in the amended bill the right was claimed in the appellee, "to remove the soil and dirt necessary for getting to the clay with the right to deposit all earth or clay to be taken out on the most convenient place to facilitate the getting out of the clay."

Under the law in the absence of a specific grant, the appellee would have substantially the right specified in the grant. (*Ewing v. Sandoval Coal and Mining Co.*, 110 Ill. 290.) By the construction given, the result was in effect the giving of greater powers than granted in the deed and exceeds the powers granted by law, "but surface rights are limited to so much of the surface and such uses thereof as are reasonably necessary to properly get at and carry away the minerals, * * *." Cyc. Vol. 27, p. 688. The court erred in its construction of the deed for the reason the powers were held to be greater than the language used warranted and exceeds the rights implied by law.

It is urged that the court erred in adjudicating the rights of Bausch who was not a party to the suit. Bausch had a lease for one year which might be extended for one year and thereunder he was to pay a royalty to the appellee based on the amount of clay mined by him. The appellee was the owner of the reversionary interest and the matters complained of

affected the rights of the appellee both as landlord and as the owner of the reversionary interest, and whether Bausch was or was not a party the appellee was directly interested in the matters involved wherein Bausch's name was used and there was no error committed in this regard.

It is next urged that the court erred in finding that the appellants interfered with the intended operations by the appellee for the reason it could not be known, except in the mind of the appellee, what its intentions were. There was evidence tending to show steps and preparations had been made by the appellee and it was not improper for the court to make such finding thereon as the facts warranted.

It is argued by the appellants that the appellee has no right to prospect for clay on any portion of the premises under the terms of the instrument under which it claims title.

It appears from the record that persons holding under the same title entered into possession of the lands in question many years prior to the purchase by the appellant, Illinois Kaolin Company, and discovered and thereafter produced clay from these premises. It also appears from the evidence that clay was thereafter mined from said premises up to the time of the trial of this cause. The deed conveyed the clay rights and the right to remove the soil to get at the clay. Under these conditions it must be held that when the owner of the clay rights entered on the land and discovered clay thereon and commenced mining the same his possession was coextensive with the boundaries of the land described and that he and all persons holding the same title have the same possession until that possession is surrendered or forfeited or the term expires.

It is urged that the court erred in awarding a mandatory injunction and that the appellee has an adequate remedy at law. The mandatory injunction only requires the removal of the portion of the embank-

ment placed on the premises after the bill was filed and if the appellants placed waste matter in such place as to interfere with the rights of the appellee after suit was begun, they cannot be heard to complain of the excessive cost of the removal thereof. *Gulick v. Hamilton,* 287 Ill. 367. As to the claim that the appellee had an adequate remedy at law, it is clear from the scope and nature of the litigation and the necessary construction of the instruments under which the parties claim title that a suit at law would be wholly inadequate.

For the reasons indicated, the decree of the circuit court is reversed and remanded for further proceedings in conformity with the views herein expressed.

*Reversed and remanded.*