(No. 26972.—

JOHN JILEK *et al.,* Appellants, *vs.* CHICAGO, WILMINGTON & FRANKLIN COAL COMPANY *et al.,* Appellees.

*Opinion filed January 21, 1943—Rehearing denied March 15, 1943.*

242

RUNYARD & BEHANNA, (JOHN L. GLEASON, and W. L. CUNNINGHAM, of counsel,) for appellants.

ESSINGTON, BEEBE & PRATT, ROY C. MARTIN, MOSES PULVERMAN, and CARTER HARRISON, for appellees.

Mr. JUSTICE GUNN delivered the opinion of the court:

The circuit court of Franklin county dismissed for want of equity the complaint of John Jilek *et al.*, to quiet title to certain real estate, and for other relief. The issue involved is the ownership of the oil and gas purporting to be conveyed by a certain mineral deed delivered to one J. T. Chenault, and by mesne conveyance to appellees. A freehold is involved. *Triger* v. *Carter Oil Co.* 372 Ill. 182.

It is stipulated that on July 12, 1905, R. Q. Simpson was the owner in fee simple of the land involved. On that date, by warranty deed, he and his wife conveyed to J. T. Chenault "all the coal, oil, gas and other minerals in or underlying the following described Real Estate, to-wit: [description] absolutely and specifically granting the rights to mine and remove all the coal and other minerals underlying said land without any liability for surface subsidence caused by mining out of the coal or other minerals and from not leaving pillars or artificial supports under said land and the further right to make under ground passages or entries through, to and from other mines and lands adjacent thereto, and with the right to the perpetual use of the same for mining purposes. It is also covenanted and agreed that the grantee herein, his heirs and assigns shall have the right to take and use as much of the surface of the said land as may be deemed necessary for the purposes of erecting, maintaining and operating hoisting, air, pumping, and escape shafts, ditches and reservoirs and the necessary roadways and railroad tracks to and from the same, with the right of way for any railroad necessary or required to carry said coal to market; but all land, the surface of which is so taken, shall, when occupied, be paid for at the rate of Fifty Dollars per acre. If the surface of any land that is occupied by buildings or other permanent improvements is taken, the full cash value of all such permanent improvements shall be paid." On October 2,

1915, R. Q. Simpson and wife conveyed to J. W. Epperson the same land, reserving to grantors "all the coal, oil and gas underlying the surface of such land, with the right to mine and remove all coal, oil and gas, etc." By mesne conveyance appellants John Jilek and Mary Jilek, acquired title to the portion of the land so conveyed to J. W. Epperson "except the coal, oil, gas and other minerals underlying all of said above described tracts * * *." Thus it appears the original owner of both the mineral and surface estates first conveyed to one grantee all of the coal, oil, gas and other minerals, and later on to another grantee the land by the same description, excepting the coal, oil, gas and other minerals; and the parties to this appeal are the remote grantees of the respective estates granted and conveyed by the original owner, R. Q. Simpson.

Plaintiffs-appellants first contend the deed to Chenault of the mineral rights conveyed no title to oil and gas, or any right to use the surface to explore for or produce oil or gas, and that said oil and gas underlying said premises, because of its being incapable of being so conveyed, passed by Simpson's deed of the surface to appellants. This claim raises squarely the issue of whether the owner of land in fee simple may convey and grant to another the right to take or own oil and gas in the ground in and by a mineral deed without at the same time conveying the superimposed surface of the land.

It has long been recognized in this State that mineral rights may be severed from the surface rights and conveyed separately, and that two estates are thus created in the land, each of which is distinct, and each of which may be conveyed or devised, and each is subject to taxation. (*In re Major*, 134 Ill. 19; *Ewing* v. *Sandoval Coal and Mining Co.* 110 id. 290; *Catlin Coal Co.* v. *Lloyd*, 176 id. 275; *Renfro* v. *Hanon*, 297 id. 353; *Transcontinental Oil Co.* v. *Emmerson*, 298 id. 394; *Updike* v. *Smith*, 378 id. 600.) The severance of the underlying mineral estate

from the surface estate in the land is effected by the deed which conveys one alone without conveying the other. (*Kinder* v. *LaSalle County Carbon Coal Co.* 301 Ill. 362; *Uphoff* v. *Trustees of Tufts College,* 351 id. 146.) Both the mineral estate and the surface estate in the land, when thus severed, are real estate. (*Catlin Coal Co.* v. *Lloyd, supra; Renfro* v. *Hanon, supra; Transcontinental Oil Co.* v. *Emmerson, supra.*) When the mineral estate is severed from the surface estate the means of obtaining or enjoying it are also granted, and pass with the grant of the minerals, without an express covenant for such purpose. (Sheppard's Touchstone, 89; 2 Blackstone's Commentaries, 36; *Ewing* v. *Sandoval Coal & Mining Co. supra; Threlkeld* v. *Inglett,* 289 Ill. 90; *Chicago, Rock Island and Pacific Railway Co.* v. *Smith,* 111 id. 363.) The right to take such minerals is a part of the real estate granted by a deed for such minerals. (*Manning* v. *Frazier,* 96 Ill. 279.) Real estate does not consist of the soil alone, but incorporeal rights, attached to or growing out of it, are also designated real estate. *Texas Co.* v. *O'Meara,* 377 Ill. 144; *Tallman* v. *Eastern Illinois and Peoria Railroad Co.* 379 id. 441; *Oswald* v. *Wolf,* 126 id. 542.

The principles set forth are firmly fixed with respect to surface and mineral estates in the land, so far as solid minerals are concerned, but it is said a different rule applies to fluid or nonsolid minerals, such as oil and gas, and that because of their supposed fugacious and wandering character a rule should be applied which permits the owner of the land in fee to convey, by deed, rights involving solid minerals, but denies him the power of conveying oil and gas rights, or the right to take them, and as a necessary corollary such rights remain affixed to the surface estate, and will pass by conveyance as a part thereof.

Oil and gas, by the overwhelming weight of authority, are minerals, (*Ohio Oil Co.* v. *Daughetee,* 240 Ill. 361; *People ex rel. Carrell* v. *Bell,* 237 id. 332; *Poe* v. *Ulrey,*

233 id. 56; *Triger* v. *Carter Oil Co. supra; Ohio Oil Co.* v. *State,* 177 U. S. 190; *Burke* v. *Southern Pacific,* 234 id. 669,) and belong to the owner of the land so long as they remain in the land. (*Watford Oil and Gas Co.* v. *Shipman,* 233 Ill. 9; *Poe* v. *Ulrey, supra; Updike* v. *Smith, supra.*) Oil and gas are parts of the land, and though in their natural state, *i. e.,* "in place," they are considered of an impermanent or fugitive character, still they are things which by surface operations may be reduced to possession, and therefore their presence in the land, with their capability of being possessed, is a valuable property right growing out of ownership of land.

Oil and gas leases granting the right to search for and take oil and gas are freehold estates in the land. (*Triger* v. *Carter Oil Co. supra; Carter Oil Co.* v. *Liggett,* 371 Ill. 482; *Greer* v. *Carter Oil Co.* 373 id. 168.) Appellants rely almost wholly upon *Watford Oil & Gas Co.* v. *Shipman, supra,* wherein we said: "A lease of land to enter and prospect for oil or gas is a grant of a privilege to enter and prospect, but does not give a title to the oil or gas until such products are found. In the eye of the law oil and natural gas are treated as minerals, but they possess certain peculiar attributes not common to other minerals which have a fixed and permanent situs. Owing to their liability to escape, these minerals are not capable of distinct ownership in place. Oil and gas while in the earth, unlike solid minerals, cannot be the subject of a distinct ownership from the soil. A grant to the oil and gas passes nothing which can be the subject of an ejectment or other real action. It is a grant, not of the oil that is in the ground, but to such part thereof as the grantee may find. [Citations.] The right to go upon the land and occupy it for the purpose of prospecting, if of unlimited duration, is a freehold interest."

It is to be observed this language was used in connection with an oil and gas lease by which the owner of land

granted the lessee the whole of the premises for the purpose of drilling and operating for oil and gas. It did not involve a severance of the surface and mineral estate in the land. The lease in the *Watford case* was executed by a cotenant owning a one-tenth interest in the real estate, and later this cotenant joined with the others in leasing all of said lands to another for the purpose of drilling for oil and gas. The first lessee prayed for an injunction and for the partition of the land between the cotenant executing the first lease and the other cotenants, so that said portion might be set off to enable the plaintiff to enter upon it and drill for oil and gas. It was with respect to such rights of a lessee that the court also said: "Appellant had no right to a compulsory partition either of the oil and gas, considered separately from the land, or of the land itself. The lease upon which it predicates its rights is not a conveyance of the interest of one cotenant in the common property or any part thereof." There is nothing in the statement contained in the *Watford case* that bars the owner of the fee from conveying to another the part of the real estate, *viz.,* the mineral estate, in which oil and gas are most likely to be found.

In the *Watford case* it is to be noticed the court said that executing an oil and gas lease, that is, a right to extract oil, was not a conveyance of the interest of one cotenant in the given property; it was a mere right to explore and prospect. It matters not that a mineral deed actually severs from the surface the strata of sand, rock or gravel in which oil is found, or whether it conveys the incorporeal right to search and reduce to possession a portion of the underlying mineral. In either event, as pointed out above, real estate is conveyed. The *Watford case,* and others using substantially the same language, involved oil and gas leases in which there was no severance of title by which the mineral estate was in one person and the surface estate in another, but in each instance the lessor

owned the entire land in fee simple. The question of what passed by a conveyance of the mineral estate was not involved. As we said in *Updike* v. *Smith, supra,* oil and gas "belong to the owner of the land so long as they remain under the land," and this, in case of a severance of the mineral and surface estates, means that oil and gas are parts of the mineral estate as they are both considered minerals.

Considering oil and gas and the right to prospect for and produce them as parts of the mineral estate, they can be no part of the surface estate, and hence the right to prospect and recapture must come from a grant of the owner of the whole fee-simple estate or from the owner of the mineral estate. A mineral deed executed by the owner of the fee carries not only title to solid minerals, but also to what is necessary to acquire title to or possession of fluid or fugacious minerals, that is, the right to enter, explore and reduce the same to possession. The owner of the mineral estate is under the same handicap in "conveying oil and gas in place," but since the oil and gas lie in his part of the land he may make a grant to explore and reduce to possession with like effect as the owner of the whole fee. He is the owner of the mineral estate. The case of *Watford Oil & Gas Co.* v. *Shipman, supra,* was not intended to, and did not, lay down a different rule. It only undertook to define the precise effect of the grant contained in an oil and gas lease, which it nevertheless defined to be a freehold estate. We know of no authority that holds a freehold estate in land is not subject to transfer.

The true relationship of oil and gas in the earth and the owner of the estate containing it is aptly set forth in *Gray-Mellon Oil Co.* v. *Fairchild,* 219 Ky. 142, 292 S. W. 743: "Oil and gas in the earth stand much as water percolating under the earth. The owner in fee owns to the center of the earth. But he does not own a specific cubic foot of water, oil, or gas under the earth until he reduces it to

possession. The reason is, these substances are fugitive, and the water, oil, or gas which is under his land today may be elsewhere tomorrow. He is only entitled to hold as his own the water, oil, or gas which he finds under his land and reduces to possession. But the right to explore for these substances and to reduce them to possession, if found, is a valuable part of his property. It is an interest in the land springing out of his ownership of everything above and below the surface. While the oil is fugitive, the sand bearing oil is as stationary as a bank of coal. The only practical use to which the oil-bearing sand can be put to is to get the oil out of it. The exclusive, permanent right to get the oil from the sand is necessarily a right to a part of the land, for to use the sand in any other way would be to destroy the right to extract the oil from it, as the sand must be allowed to remain as it is for the oil to flow through it."

No authority from any jurisdiction is cited by appellants (except one overruled case) as sustaining the proposition that the grantee of the entire mineral estate in the land does not acquire the same rights to oil and gas, or the right to explore for, and take oil and gas, as has the owner of the entire fee. Without directly passing upon this question we have recognized this right to transfer oil and gas, or the right to transfer oil and gas rights by mineral deed, in *Triger* v. *Carter Oil Co., supra, Greer* v. *Carter Oil Co. supra, Updike* v. *Smith, supra,* and *Rhodes* v. *Davis,* 374 Ill. 65.

In *Conover* v. *Parker,* 305 Ill. 292, which is cited with approval in *Updike* v. *Smith, supra,* a decedent by his will, among other things, devised each of his children one seventh of all oil, gas and mineral under the real estate of which he was seized, and this court, by affirming the decree of the circuit court, held that such oil and gas passed by such devise. This right has been embodied in a statute wherein it is provided that "Any mining right, or the right to dig

for or obtain iron, lead, copper, coal, or other mineral from land, may be conveyed by deed or lease, which may be acknowledged and recorded in the same manner and with like effect as deeds and leases of real estate." Ill. Rev. Stat. 1941, chap. 94, sec. 6.

We entertain no doubt of the right of a land owner to convey minerals by deed, and we hold that the mineral deed of July 12, 1905, vested in J. T. Chenault and his grantees the right to such oil and gas under the real estate in question as they might reduce to possession as a part of the mineral estate so conveyed; and that the surface estate acquired by appellants, which excepted the coal, oil, gas and minerals as appertaining to it, acquired no right to take oil and gas from the mineral estate.

Appellants also contend that even though the deed conveyed the mineral estate to appellees, no privilege or right to use the surface of the land to explore for oil or gas, or to produce oil or gas, was reserved in the deed of the mineral estate to J. T. Chenault, or excepted in the conveyance of the surface estate to appellants. The deed to the grantor of appellants conveyed the land described "except the coal, oil, gas and other minerals underlying all of said above described tracts." The deed which severed the mineral estate, made some fourteen years earlier to J. T. Chenault, conveyed "all of the coal, oil, gas and other minerals in or underlying the following real estate, [description] absolutely and specifically granting the rights to mine and remove all the coal," etc., as shown by the copy of the deed hereinbefore set forth.

There appears to be little doubt when the mineral estate is severed from the surface estate that with the mineral estate all means to attain it are also granted for the purpose of enjoying it. This is because it is presumed the grantor intended to convey, and the grantee expected to receive, the full benefit of the mineral estate, and therefore the grantor not only conveyed the thing specifically described, but all other rights and privileges necessary to the enjoyment of

the thing granted. *Threlkeld* v. *Inglett, supra; Ewing* v. *Sandoval Coal & Mining Co. supra; Rhomberg* v. *Texas Co.* 379 Ill. 430; *Chicago, Wilmington & Franklin Coal Co.* v. *Minier,* 127 Fed. (2d) 1006.

It is said, however, by appellants, that the rule that the expression of a particular subject implies the exclusion of subjects not enumerated is applicable here, because the specific reservation in the conveyance granting the mineral interest of (a) the right of subsidence without damage; (b) the use of passageways and entries to move coal from other land; and (c) the right to take surface land for other mining purposes at a certain price, excludes any right to enter the mineral estate from the surface, which might otherwise be implied. If the rights reserved in the mineral deed were, in fact, opposed to the implied right to enter upon the land for the purpose of drilling and exploring for oil, there would be force to this suggestion. However, the rights just enumerated in the mineral deed are not ones which are implied by a grant of the mineral estate. The law requires the owner of the mineral estate to extract minerals without damaging the surface, and, unless there is a specific exemption of liability, the owner of the surface can recover for damages caused by sinking or subsidence caused by mining. *Wilms* v. *Jess,* 94 Ill. 464; *Lloyd* v. *Catlin Coal Co.* 210 id. 460.

It requires no citation of authority to sustain the proposition that the surface of the land could not be covered with railway tracks, reservoirs, structures and manufacturing equipment upon the bare license to enter the mineral estate for the purpose of removing the mineral therefrom. These rights necessarily must be covered by an express contract or covenant or they will not exist, and are therefore rights in addition to the implied right to enter, and an extension thereof and not in opposition thereto.

Upon examination it will be found that the cases cited in opposition to this principle are not applicable. In the case of *Rubens* v. *Hill,* 213 Ill. 523, reliance was had upon

an implied covenant that rented premises be habitable, but the lease contained an express covenant and specification of what the landlord was to do in respect to making the premises habitable, and it was therefore held that the implied covenant was limited by the express covenant, because to hold otherwise would limit the express contract of the parties. In *Poe* v. *Ulrey, supra,* where it was sought to enforce an implied covenant to drill oil wells, it was held that a specific agreement as to the extent to which wells should be drilled to prevent a forfeiture of the lease, excluded any implied covenant, because the expressed and implied covenants were in opposition to each other. *Kinder* v. *LaSalle County Carbon Coal Co.* 310 Ill. 126, is not in opposition because in that case there was involved only the construction of the scope of an express reservation, and no questions of implied rights to remove minerals were involved. The case of *Rhomberg* v. *Texas Company, supra,* has no application at all, because in that case there was an express covenant that the surface of the soil could not be broken for the purpose of removing minerals, which in its very nature excluded an implied covenant of opposite effect.

It has been held that the implied right to occupy so much of the surface as may be needed to open and work the mineral estate is not limited by the special grant or reservation of privileges, which would not be implied. (*Williams* v. *Gibson,* 84 Ala. 228, 4 So. 350; *Continental Clay Co.* v. *Illinois Kaolin Co.* 232 Ill. App. 596; *Ingle* v. *Bottoms,* 160 Ind. 73; 18 R. C. L. 1156; 36 Am. Jur. sec. 177, p. 402.) In this case the owner of the fee in severing the estates, made a grant of the mineral estate first, giving the grantee all the coal, oil, gas and other minerals underlying the land. He necessarily reserved to himself all the estate in the land not thereby conveyed. By the conveyance of the minerals he not only necessarily granted all the right of access thereto, but, in addition, he specifically granted the right to mine and remove all coal

and other minerals, with certain extended rights, which, being in excess of any rights of entry implied by law, do not prevent the latter from being effective. We are therefore of the opinion that the rights above set out, granted to the owner of the mineral estate, being in excess of any rights of entry which would be implied, do not prevent the latter from being effective.

Appellants also claim the deed to J. T. Chenault operated as a conveyance for life because of section 13 of the Conveyance Act. (Ill. Rev. Stat. 1941, chap. 30, par. 12.) Counsel misapply this provision of the law, and seem to infer that a division of the land into a surface estate and a mineral estate necessarily prevents the grantee from having a fee simple in the severed mineral estate. This section of the statute provides in effect that by the use of the statutory form of deed a fee-simple estate will be granted, unless a lesser estate appear from express words or by operation of law.

The term "estate" qualifies the condition or circumstance in which a tenant stands, as to his property, or the duration of his interest. (*Tallman* v. *Eastern Illinois and Peoria Railroad Co. supra;* 1 Preston on Estates, 20; *Ball* v. *Chadwick,* 46 Ill. 28.) It does not have reference to the manner in which land may be divided. It may be set off horizontally or vertically, but in either event if the deed is in the ordinary statutory form of "convey and warrant" the "estate" which the grantee has in the real estate so set off is a fee simple, unless there are words which expressly limit that estate. The property described in the Chenault deed was a mineral estate lying on a horizontal plane beneath the surface land, which in effect only divided the land, but had no effect whatever to limit the estate in that which was conveyed to less than a fee. There is no merit in this contention.

It is finally contended that the rights of the appellees were lost by adverse possession or by abandonment. As pointed out above, there was a complete severance of the

254

mineral estate from the surface estate, and in such event the law is well settled there can be no adverse possession of the mineral estate by the owner of the surface estate, even though the latter hold an instrument which purports to constitute color of title to the whole estate in the land. Possession of the surface does not carry possession of the minerals. ( *Uphoff* v. *Trustees of Tufts College, supra; Renfro* v. *Hanon, supra; Kinder v. LaSalle County Coal Co. supra.*) Nor does nonuser or abandonment of the mineral interest terminate the estate. *Uphoff* v. *Trustees of Tufts College, supra; Scott* v. *Laws,* 185 Ky. 440, 215 S. W. 81; *Gill* v. *Fletcher,* 74 Ohio St. 294, 78 N. E. 433.

From a careful perusal of the record and the briefs of counsel we find no error in the proceedings of the circuit court, and its decree is accordingly affirmed.

*Decree affirmed.*