(No. 15520.—Decree affirmed.)

JOSEPH H. KINDER *et al.* Appellees, *vs.* THE LaSALLE
COUNTY CARBON COAL COMPANY *et al.* Appellants.

*Opinion filed October 20, 1923—Rehearing denied Dec. 11, 1923.*

1. DEEDS—*in ascertaining intention nothing will be rejected as
surplusage.* The intention of the parties is to be given effect in
construing deeds, but in ascertaining such intention effect must be
given to each clause of the deed, rejecting nothing as surplusage.

2. SAME—*construction placed by the parties on doubtful lan-
guage may be considered.* In construing a deed the construction
placed upon doubtful language by the parties themselves may be
considered by the courts.

3. SAME—*when deeds do not convey sand, gravel and limestone.*
A deed conveying "all the bituminous or stone coal, together with
the right to mine the same," and a subsequent deed by the same
grantor to another grantee conveying part of the surface of the
land and reserving "all bituminous or stone coal and other miner-
als, * * * together with the right to mine and raise the same,"
do not convey sand, gravel and limestone, which can only be taken
out by destroying the surface of the land, even though the *haben-
dum* clause of the first deed purports to quit-claim the grantor's
right to all minerals, of every description.

4. LIMITATIONS—*what is sufficient adverse possession of sand,
gravel and limestone.* Exclusive possession of the surface of land
by the legal owner thereof for more than twenty years, during
which time he takes out, uses and sells sand, gravel and limestone
from such parts of the land as suits his convenience, with the
knowledge of the owner of the coal underlying the land, who pur-
chased some of the sand, gravel and rock so taken out, and with
the knowledge that the surface owner is extensively engaged in
selling sand and gravel, is sufficient adverse possession of the sand,
gravel and limestone to establish the surface owner's title thereto.

5. SAME—*what not necessary to constitute adverse possession
of sand, gravel and limestone.* To constitute adverse possession of
sand, gravel and limestone by the legal owner of the surface of the
land it is not necessary that he take such sand, gravel or limestone
from every acre of his land; nor is it necessary, in order to estab-
lish his adverse possession of the limestone, that he remove the
same quantity of it that he does of the sand and gravel.

APPEAL from the Circuit Court of LaSalle county; the Hon. EDGAR ELDREDGE, Judge, presiding.

WALTER PANNECK, and McDOUGALL & CHAPMAN, (CLARENCE T. MORSE, and CLARENCE B. CHAPMAN, of counsel,) for appellants.

WOODWARD, HIBBS & POOL, JAMES H. RENNICK, and GERALD G. BARRY, for appellees.

Mr. CHIEF JUSTICE FARMER delivered the opinion of the court:

Appellees filed their amended bill in chancery against appellants and other defendants in the circuit court of La-Salle county, claiming they were owners of the surface of the land described in the bill, above the coal, and had the right to remove therefrom the sand, gravel, clay, shale and limestone; that defendants claimed title to the substances mentioned which were under the agricultural surface, and some of them had placed clouds on appellees' title. The bill prayed the removal of the clouds and that the title to all the surface above the coal be decreed to be in appellees and their title quieted. The defendants, by their answer, denied appellees were the owners of the sand, gravel, clay, shale, limestone and other mineral underlying the top soil. The court rendered a decree in favor of the complainants, the appellees.

The facts not in dispute are, that on March 25, 1867, James Cowey and wife conveyed to the Chicago Coal Company "all the bituminous or stone coal, together with the right to mine the same, underlying" all of the premises in controversy and a large amount of other land. The deed described 1045 acres, and, following the grant by legal description, the *habendum* contains these words: "Said party of the first part also hereby grants, conveys, quit-claims and releases to said party of the second part, its successors and assigns, all the rights in or title to the oil and minerals, of

every description, underlying the above and foregoing lots, tracts and parcels of land which he owns or is now possessed of, to have and to hold the same forever." May 17, 1869, Cowey and wife conveyed by warranty deed, for the expressed consideration of $3195, to James Kinder, 89 acres of the land in controversy, "reserving and excepting to said party of the first part all bituminous or stone coal and other minerals, as well as all petroleum oil, in, upon or underlying said premises above described, together with the right to mine and raise the same." On the same day Cowey and wife conveyed by warranty deed to William Burrell, for the expressed consideration of $3805, 106 acres of the land in controversy, with the same reservations. The land involved in this litigation is 185 acres of the land conveyed by Cowey to Kinder and Burrell. Kinder died testate in 1883 and devised his land to his children, subject to a life estate in his widow, Ann G. Kinder. Burrell conveyed his land in 1881 to Richard T. Kinder and Timothy Healy. Healy died testate in 1884 and by his will devised his interest in the land to Ann G. Kinder. She died intestate in 1897. After her death all the land was sold under a partition decree in March, 1899, and purchased by appellees, complainants in the bill, who received a deed therefor from the master in chancery.

By their bill appellees claimed title by virtue of the deed from Cowey and by *mesne* conveyances to be the owners of all the surface above the coal, their ownership embracing the agricultural surface, sand, gravel, shale, clay and limestone. They also claimed title by adverse possession under sections 1 and 6 of the Statute of Limitations. Defendants to the bill, who are appellants here, by their answer denied appellees were the owners of any part of the land except the agricultural surface. The answer admits the agricultural surface consists of loose loam, shading into clay, sand and gravel, under which is limestone, shale and coal, but denies appellees have any interest in the coal and minerals

underlying the premises, denies they have been in possession of any of said minerals, and denies they are entitled to any of the relief prayed. The circuit court sustained a demurrer to and dismissed the original bill. That decree was reversed by this court and the cause remanded, with directions to overrule the demurrer. (*Kinder* v. *LaSalle County Carbon Coal Co.* 301 Ill. 362.) After the case was remanded appellees filed their amended bill, the cause was heard on bill and answer, and a decree rendered that the deed from Cowey to the Chicago Coal Company conveyed only minerals which had to be taken out by mining operations; that the parties to the deed did not intend by it to pass title to any part of the surface; that limestone was a part of the surface and title thereto remained in Cowey; that by his deeds to Kinder and Burrell he intended to convey, and the grantees intended to acquire, all the surface, including limestone. The decree found appellees were owners in fee of the surface and had the right to use and remove the limestone, sand, gravel, clay and shale, and quieted their title and perpetually enjoined defendants from asserting title. The court made no finding as to appellees' title under either section of the Statute of Limitations nor as to title to minerals between the limestone and coal. The LaSalle County Carbon Coal Company and Frank F. Follett, receiver of the Northern Illinois Coal and Iron Company, have prosecuted this appeal.

When the deeds were made by Cowey to the Chicago Coal Company and to Burrell and Kinder, Cowey operated a coal mine just across the Little Vermilion river from the land of appellees, raising the coal by cages. Limestone then had no commercial value, being used principally for foundations of buildings. No limestone was shown to have been taken off appellees' land prior to 1888. Cement was not made of limestone prior to 1874 and but little was manufactured from limestone prior to 1880. Since 1900 it has been used very extensively for the manufacture of Portland

310—9

cement. From approximately the southeast corner of appellees' land there is a ridge of mostly exposed limestone, running northwesterly across the entire land. The stone dips on each side of the ridge, and on the east side is covered to a depth of about four feet in most places. West of the ridge the dip is more abrupt toward the river, and at some places the stone is covered to a depth of approximately fifty or more feet and at other places a less depth, some of it being very near the top. There are about sixteen acres of the land in pasture, which cannot be cultivated because of the stone, and about twelve acres along ravines which empty in the Little Vermilion river, which is the west boundary of appellees' land. The limestone at the bluff of the river is from twenty to forty feet thick and is covered with gravel and sand. The overburden of sand and gravel above the limestone varies in depth in places from two to four feet. What we have said about the character of the land, limestone and its overburden we think will serve sufficiently to show that there is no place on the land where it would be practicable to remove the limestone by underground methods without destruction of the top soil or agricultural surface. The only practicable way of mining the limestone is by quarrying it from the top.

The decree finds that at the time Cowey made the conveyances, coal, which was then being mined in the vicinity, was the only mineral known to underlie the land for which there was a profitable market; that at the time the conveyances were made the land consisted of loose loam, clay, gravel, limestone, shale, sand and coal; that the land was rough and covered with stone, sand, gravel, trees, shrubs and was intersected with ravines; that an exposed ridge of limestone extends from the southeast corner of the land to the northwest corner and in various places throughout the premises the limestone crops out and is a part of the surface; that the limestone forms part of the surface along practically all the westerly side of the land; that where it

is not exposed it is covered with loose loam, sand, gravel and clay, in which vegetation grows and farm products are raised; that the limestone strata, the loose loam, sand, gravel, clay and shale superimposed above the limestone, are parts of the surface and appellees are declared to be the owners. The court states he makes no finding as to title by adverse possession, contemporaneous construction of the deeds or upon color of title and payment of taxes, nor as to the minerals, if any, lying between the limestone and the coal.

Appellees contend the decree is right in so far as it declares them to be the owners of the limestone and the sand, gravel and clay superimposed thereon, but assign cross-errors on the failure of the court to pass upon their claim of title by adverse possession, and on the failure of the court to determine whether they own the minerals and substances between the limestone and the coal.

This court did not pass on the record title on the former appeal although that question was presented. What we decided was, that title to a mineral stratum may be acquired by adverse possession and may be proved in the same way as title to the surface. As the bill alleged title by adverse possession in addition to record title, we held the trial court should have overruled the demurrer to the bill for that reason.

Appellants contend that appellees own only the agricultural soil under the record title, while appellees claim to own by the record title everything above the coal; that appellants' title is limited to minerals like coal and oil so located that they can be mined by underground methods without destroying the agricultural surface. Counsel for appellants say the decision of this question depends on the deed from Cowey to the Chicago Coal Company, and argue that by a grant of "minerals of every description," limestone, which is a mineral, passed to Cowey's grantee, the Chicago Coal Company. They insist the language of the

conveyance is so plain as to admit of no other construction. In the construction of deeds and other written documents the intention of the parties will be given effect, but in ascertaining the intention effect must be given to each clause and word of the instrument, rejecting nothing as surplusage. The intention is to be arrived at from a consideration of the whole instrument and then given effect, unless to do so would violate some rule of law or public policy. *McCoy* v. *Fahrney,* 182 Ill. 60; *Mittel* v. *Karl,* 133 id. 65; *Conway Co.* v. *City of Chicago,* 274 id. 369.

Appellants argue that stone is a mineral, and the description in the granting clause of the deed from Cowey to the Chicago Coal Company of "the bituminous or stone coal, together with the right to mine the same," underlying the tracts described, and the quit-claim clause following, of "the oil and minerals of every description" underlying the tracts of land described, by plain terms conveys everything within the definition of minerals, and the effect of the conveyance cannot be limited or qualified by the deeds to Kinder and Burrell or a consideration of the conditions and circumstances at the time of the conveyance. Stone is embraced in the technical definition of mineral. So, also, is the soil itself, as matter is divided into three general classes: animal, vegetable and mineral. In *Brady* v. *Smith,* 181 N. Y. 178, the reservation in the deed of "all mines and minerals" which may be found on the land described, with the right to enter, "dig and carry the same away," was considered and numerous authorities referred to. The land was largely covered with limestone and a granite ledge. Some of it was tillable and some of it was timbered. The court referred to the scientific definition of minerals and the popular understanding of what constitutes minerals, and said that in construing such grants it is necessary, if possible, to ascertain the intention of the parties. The court further said: "It is thus apparent that each case must be decided upon the language of the grant or reservation, the

surrounding circumstances, and the intention of the grantor
if it can be ascertained. The adoption of arbitrary defini-
tions in reference to mineral substances buried in the earth
is not permissible. The word 'mineral,' standing by itself,
might, under a broad, general, popular definition, embrace
the soil and all that is to be found beneath its surface; un-
der a strict definition it might be limited to metallic sub-
stances; and under a definition coupling it with mines it
covers all substances taken out of the bowels of the earth
by the process of mining. We are of the opinion that un-
der the exception and reservation in question John LaFarge
did not reserve the right to himself, his heirs and assigns
forever, to the limestone on the premises conveyed and to
conduct open quarrying for the purpose of taking posses-
sion thereof."

In *Armstrong* v. *Lake Champlain Granite Co.* 147 N. Y.
497, the court considered a conveyance of land under which
there was a vein of granite. The land was thickly timbered
and the granite was under soil from four to six feet deep.
The deed granted all the mineral ores on the premises de-
scribed, with right to mine and remove the same; also the
right to sink shafts, sufficient surface for suitable buildings
and machinery for raising and mining ores, with right of
ingress and egress. The court said it was manifest, with-
out proof, that the granite could only be taken by open
quarrying and destruction of the surface, and that a rea-
sonable construction of the grant limited it to minerals ob-
tained by underground working, and as the granite could
not be so obtained it did not pass by the deed. To the same
effect are *White* v. *Miller,* 200 N. Y. 29; *Rock House Fork
Land Co.* v. *Raleigh Brick and Tile Co.* 83 W. Va. 20.

In *Northern Pacific Railway Co.* v. *Soderberg,* 188 U. S.
526, cited and relied on by appellants, the court said: "The
word 'minerals' is used in so many senses, dependent upon
the context, that the ordinary definitions of the dictionary
throw but little light upon its significance in a given case."

That language is quoted substantially in 18 R. C. L. 1094, in discussing the interpretation of grants of minerals, and the author says: "The most reasonable rule is that each case must be decided upon the language of the grant or reservation, the surrounding circumstances, and the intention of the grantor if it can be ascertained." We think that the reasonable rule, and it is supported by an abundance of authority.

When Cowey conveyed to the Chicago Coal Company he was engaged in mining coal in the immediate vicinity of appellees' land, then owned by him. Coal was the only known mineral under the surface which had any commercial value. Cowey knew appellees' land was underlaid with some gravel and limestone. On parts of the land the limestone was on the surface, and on the rest of it was covered with loam, sand and gravel from a few inches in depth to a depth, in places, of fifty or sixty feet. Where the loam was of sufficient depth the land was available for cultivation in crops and was productive. Cowey knew the limestone was so near the surface that it could not be mined by underground methods without the practical destruction of the agricultural surface. To our minds it would be unreasonable to say his intention was to reserve only the agricultural surface above the limestone and convey to the grantee the limestone, with the right to remove it, and thereby destroy all he had reserved. The granting clause of the deed conveys only the coal, "together with right to mine the same," and the quit-claim clause of "all minerals of every description" underlying the land described cannot reasonably be construed to embrace minerals other than such as could be removed by mining operations underground, which would not destroy the surface for agricultural purposes. It is altogether reasonable to presume that Cowey and his grantee had no thought of limestone, sand and gravel as minerals. They knew those were on or near the surface and were of an entirely different nature from coal and oil,—the minerals

specifically mentioned in the deed and which could be mined by underground methods. Two years after Cowey made the deed to the Chicago Coal Company he conveyed the land in controversy to Kinder and Burrell, reserving "all bituminous or stone coal and other minerals, as well as all petroleum oil, in, upon or underlying said premises above described, together with the right to mine and raise the same." By that reservation the grantor meant and intended to except from the grant what he had conveyed to the Chicago Coal Company, and the words "the right to mine and raise the same," show the reservation was intended to be limited to minerals which could be mined and raised by underground workings without destruction of the surface.

It is also proper to consider the construction the parties themselves have placed on the deed. (*Hollenbeck* v. *Hollenbeck,* 232 Ill. 384; 18 Corpus Juris, 262.) Appellants by their answer claimed they, through conveyances from Cowey, the common source of title, owned the sand, pebbles, clay, shale and limestone, and that the deeds to Kinder and Burrell, through whom appellees claim, conveyed none of those things but conveyed the agricultural surface only, and appellants claimed they had the right to remove all the minerals above mentioned, even though their removal might injure or destroy the surface. Appellees and their predecessors in title during a period of many years engaged in the extensive removal of sand and gravel from the land and also quarried and sold limestone. Contractors, and the people of the vicinity generally, knew of these operations. Appellant the LaSalle County Carbon Coal Company had three coal shafts in the vicinity, and it bought and received from the land of appellees large quantities of sand and gravel. It bought some rock for its mines. The appellees rented from the coal company a roadway over its land for some years for the purpose of hauling over it sand, gravel and stone. In 1868 the Chicago Coal Company conveyed to the Northern Illinois Coal and Iron Company "all of

the bituminous or stone coal, together with the right to mine the same," underlying the land, with a quit-claim clause of the "minerals of every description," similar to the deed from Cowey to the grantee. In 1873 the Northern Illinois Coal and Iron Company mortgaged its interest in the land in controversy, with other land, to secure $225,000. The property mortgaged was described as "all of· the bituminous or stone coal, together with all the right to mine the same," underlying the land described. That mortgage was foreclosed shortly after it was executed and the property sold to the trustees of the estate of the payee of the mortgage indebtedness, and they conveyed to the LaSalle County Carbon Coal Company in 1883. The right of appellees and their predecessors in title to the limestone, sand and gravel was never questioned by appellants or their predecessors in title until after May, 1919, when appellees gave an option on the purchase of their land to Fritz Worm for the Red Star Cement Company for $700 per acre. Within the last twenty years the manufacture of Portland cement from limestone has·increased to mammoth proportions and limestone has come into great demand. Practically all of the stone used for manufacturing cement is produced by open quarrying. Cowey organized, was a stockholder in and president of the Chicago Coal Company at the time he executed the deed to it and when that company conveyed to the Northern Illinois Coal and Iron Company. Since 1883 the latter company has remained dormant and has transacted no business. We have been unable to find just when appellant Follett was appointed receiver for that corporation, but the record shows he was on motion of appellees made a defendant to the amended bill in July, 1922. The amended bill was filed June 27, 1922, and it appears from the answer of defendants to the amended bill that he was appointed receiver after the litigation was commenced. The inference is warranted that the appellants and their predecessors did not interpret the deeds under

which they claimed title as conveying, or as intended to convey, the limestone, until it had become enormously valuable. By their conduct and acts they construed their title as not embracing the sand, gravel and limestone.

We are also of opinion the proof was amply sufficient to have warranted a finding and decree in appellees' favor under the claim of adverse possession for twenty years. It is true they had not taken sand, gravel and limestone from every acre of the land, but for more than twenty years they had openly and notoriously removed those minerals from various places on the land and sold to whomsoever wanted them. What we have above said shows appellants had actual notice of appellees' quarrying and selling limestone, sand and gravel. Appellees had the land enclosed by fences and there were two dwelling houses on it. No one else assumed to exercise any right to or control over the limestone, sand and gravel but appellees. They had for many years done an extensive business in removing and marketing sand and gravel, and while apparently the demand for limestone did not justify so extensive operations as for sand and gravel, throughout a period of more than twenty years appellees did quarry, haul away and sell limestone from the land. Appellants in their reply brief admit the acts of ownership exercised by appellees over the sand and gravel were notorious, and say it might be held, if the question were of any importance, that they had acquired title to it by adverse possession. They say, however, that would not aid their claim of title to the limestone by adverse possession, because, they say, the adverse possession of one stratum of mineral cannot give title to any mineral except the one possessed. What is required to constitute title to land by adverse possession for twenty years has been frequently defined by this court and is too familiar to require reference to the authorities stating the general rules.

But appellants contend there is a marked difference between the rule applicable to the surface and entire estate in

land and a claim to a mineral estate where the title to the surface and to the minerals underlying it has been severed. We held in the former appeal of this case that title to a mineral stratum may be proved by adverse possession, but recognized that proof of actual possession in such case is attended with more difficulty than in the case of the surface. Coal and minerals in place, where title to them has been severed from title to the surface, are land, and title to the minerals may be shown by documentary evidence or by proof of adverse possession under the Statute of Limitations. (*Catlin Coal Co.* v. *Lloyd,* 176 Ill. 275.) Where there has been a severance, the occupancy of one estate will not be considered the possession of the other. Conceding, for the sake, alone, of the argument, that appellees and their predecessors had no record title or color of title to the limestone, sand and gravel, did they have such possession of them as to give them title by adverse possession? Appellants concede that may be true as to the sand and gravel but deny it is true as to the limestone. The possession by appellees of the sand and gravel was of the same character as that of the limestone. The only difference we are able to see is that they engaged more extensively in removing sand and gravel than limestone, on account of the demand for sand and gravel being better. They probably removed sand and gravel from more portions of the land than they did limestone, but they did not remove sand and gravel from every acre of the land, nor did they the limestone. They removed both from the parts of the land that suited their convenience. They selected such places as they chose and never asked or were given permission by anyone. The proof shows they during a period of more than twenty years quarried stone from at least three, different parts of the land and sold it. A dwelling house east of the limestone ridge was built on the limestone. During all that period appellees and their predecessors in title were engaged in removing limestone, sand and gravel and employed many

men and teams in the neighborhood.   They sold large quantities of sand and gravel, and some limestone, to one of the appellants.   These acts were open, notorious and hostile to appellants and their predecessors.   It was impossible for appellees to literally take possession and quarry the limestone on the entire 185 acres at one time.   They did take actual possession of it at different places on the land, quarried, hauled it off and sold it, and continued to do so for a period of twenty years, of which appellants had actual notice.   By their acts appellees evidenced their claim of right to the limestone at any and every place found in the entire tract.   They were such acts of dominion over the limestone as were notice to persons in the neighborhood that they claimed the exclusive use and control of the limestone and were sufficient to constitute adverse possession of it.   (*St. Louis, Alton and Terre Haute Railroad Co.* v. *Nugent,* 152 Ill. 119; *Bugner* v. *Chicago Title and Trust Co.* 280 id. 620; *Roberts* v. *Cox,* 259 id. 232.)   Appellees' acts were sufficient in character to give notice to the public that they claimed the limestone adversely to appellants and everyone else.

While the evidence would justify holding the appellees proved title under the sixth section of the statute it is unnecessary to discuss that feature of the case.

There is force in appellees' contention that they are the owners of everything from the top surface down to the coal, but we do not think we would be justified in holding they have title to the minerals, if any, between the limestone and coal which could be removed by underground methods without injury to or destruction of the surface.

While the evidence was sufficient to have warranted the court to decree that appellees proved title under the Statute of Limitations, it is not necessary to send the case back with directions to so decree, as appellees' title was correctly established and quieted on other grounds.

The decree will therefore be affirmed.

*Decree affirmed.*