**DOWNSTATE STONE COMPANY,**
**Plaintiff-Appellant,**

v.

**UNITED STATES of America,**
**Defendant-Appellee.**

**No. 82–2795.**

United States Court of Appeals,
Seventh Circuit.

Argued April 13, 1983.
Decided July 29, 1983.

---

James C. Cook, Walter & Williams, P.C., Belleville, Ill., for plaintiff-appellant.

Robert L. Simpson, Asst. U.S. Atty., Frederick J. Hess, U.S. Atty., East St. Louis, Ill., for defendant-appellee.

Before CUMMINGS, Chief Judge, PELL, Circuit Judge, and BROWN, Senior Circuit Judge.*

CUMMINGS, Chief Judge.

Downstate Stone Company ("Downstate") commenced a quiet title action against the United States pursuant to 28 U.S.C. § 2409a on October 6, 1980, to determine whether it is entitled to quarry limestone under a mineral reservation it holds on two parcels of land located in the Shawnee National Forest in Illinois. At the same time Downstate sought to enjoin preliminarily the United States from enforcing several criminal statutes intended to protect the national forests and ensure compliance with Forest Service rules and regulations, so that Downstate could conduct mining operations on the premises with impunity. This Court reversed the district court's order granting the preliminary injunction in *Downstate Stone Co. v. United States,* 651 F.2d 1234 (7th Cir.1981), and the case was then tried on the merits before Judge Beatty who found that Downstate had no right, title or interest to the limestone on the two tracts. Downstate appeals from that decision.

* The Honorable Bailey Brown, Senior Circuit Judge of the United States Court of Appeals for the Sixth Circuit, is sitting by designation.

The dispute involves the 40-acre Purcell tract and the 81-acre Wiedemann tract which were conveyed to the United States in separate deeds in 1935. The United States acquired title to both tracts for watershed protection and forestry purposes under the authority of the Weeks Forestry Act of 1911, as amended, 36 Stat. 962, 16 U.S.C. § 515 et seq. Both conveyances contained the following reservation of mineral rights:

reserving * * * all minerals in, upon, or under the above described real estate, together with the right to prospect for and remove said minerals * * *

In the Purcell deed all minerals were reserved for a period of 50 years and in the Wiedemann deed all minerals were reserved for a period of 75 years. Both conveyances stated that any prospecting for or removal of the reserved minerals must be carried on in accordance with the Secretary of Agriculture's 1911 rules and regulations enumerated therein. In June and July 1980, H.H. Barter, the 90% owner and chief operating officer of Downstate, acquired the right to all minerals except oil and gas from the heirs of the parties that had reserved the mineral rights in 1935, and he leased them to Downstate.

The lands comprising and surrounding the Purcell and Wiedemann tracts are composed principally of limestone, which lies both on the surface and under topsoil, gravel and sand. In 1937 the United States acquired the adjoining Grant tract and granted a permit allowing limestone quarry operations for the purpose of obtaining road-building materials. The quarrying operation on the Grant tract opened a quarry face on the Purcell tract for a distance of approximately three hundred feet. None of the grantors or heirs of the Purcell or Wiedemann tracts ever protested. In addition, the United States as surface owner issued several prospecting permits for limestone on the Purcell and Wiedemann tracts without objection from the owners of the reserved mineral rights. The owners of the reserved mineral rights did not convey or dispose of the limestone between 1935 and 1980, though they did lease the Purcell and Wiedemann tracts for the purpose of oil and gas exploration both before and after the 1935 conveyances to the United States.

■ The sole issue in this case is whether the grantors intended to include limestone within the scope of the mineral rights reservation made in the Purcell and Wiedemann conveyances. There is little direct evidence on the intent of the parties because the conveyances in issue occurred 45 years before the litigation began. The circumstances at the time of the conveyance, the records, documents and acts of the parties, however, are relevant to their intentions as to limestone ownership, and it is to these factors that the Court must turn in this case.

The United States acquired the two parcels at issue here under the authority of the Weeks Act, enacted in 1911 and amended by the Clarke-McNary Act of 1924. The amended Act authorizes the Secretary of Agriculture to identify and purchase certain lands for the purpose of promoting or protecting the navigation of streams and promoting the production of timber. Such lands are to be administered by the Department of Agriculture as national forest lands. 16 U.S.C. §§ 515, 516, 521. It is clear from the face of the Act that land could be acquired by the United States when control of such lands by the Federal Government would promote the stated goals. Section 518 of Title 16 reinforces this view by providing that lands encumbered by rights of way, easements and reservations still may be acquired by the United States if the encumbrances do not interfere with the use of the lands for timber production or protection of navigable streams.

■ Productive use of the surface was thus a stated goal of the Weeks Act, and the United States acquired the Purcell and Wiedemann tracts to serve the purposes of that Act. But the evidence in the record indicates that uncontrolled limestone quarrying by the mineral owner would preclude productive use of the surface by the United States. The parties' Stipulation No. 11

states that limestone quarrying would require almost complete surface destruction. Plaintiff's chief operating officer Mr. Barter testified that limestone quarrying would level and remove the face of the forested hill involved here (Tr. 46). In Downstate's Initial Draft Environmental Assessment Report referred to in this Court's earlier opinion, 651 F.2d at 1242–1243,[1] Downstate indicated that quarrying operations would leave a large open quarry area where there had formerly been rocks, trees and soil. Although the trees and underbrush might eventually grow back, it would take generations to restore the land to its natural state. The district court also noted Mr. Barter's suggestion that he was creating the basis for a "recreational lake" by leveling a 900-foot hill (App. 24). Thus if Downstate had acquired the right to quarry limestone and thereby destroy the surface, management and control of the surface would obviously rest with Downstate rather than the Forest Service. In light of the purposes of the Weeks Act, the fact that the grantors knew the land was being acquired under the authority of the Act because it was so stated in the deeds, and the fact that it was common knowledge that limestone comprised part of the surface, the original parties could not have intended to include limestone within the mineral rights reservation. See *Cumberland Mineral Co. v. United States,* 513 F.2d 1399 (Ct.Cl.1975).

■ Under Illinois law too, a court will find it unreasonable to assume that a party intended to reserve the surface, and at the same time convey to the mineral owner the limestone on the surface with the right to remove it, thereby destroying all he had reserved. *Kinder v. LaSalle County Coal Co.,* 310 Ill. 126, 134, 141 N.E. 537 (1923). Thus a grant of "minerals, of every description" does not include limestone when the result would lead to destruction of the surface. *Id.;* see also *Beury v. Shelton,* 151 Va. 28, 144 S.E. 629 (1928); *Holland v. Dolese Co.,* 540 P.2d 549 (Okl.1975). This result does not necessarily conflict with interpretations of the so-called "broad form" deed in strip-mining cases. First, the question in this case is whether the mineral reservation includes limestone; in the strip-mining cases, the question is whether the parties anticipated use of a particular method for mining coal. Second, the broad form deed usually contains a clause disclaiming liability on the part of the mineral owner for damage to the surface or to the value of the surface. See *Martin v. Kentucky Oak Mining Co.,* 429 S.W.2d 395, 397 (Ky.1968); *Department of Forests and Parks v. George's Creek Coal & Land Co.,* 250 Md. 125, 242 A.2d 165, 167 (1968), certiorari denied, 393 U.S. 935, 89 S.Ct. 295, 21 L.Ed.2d 271; *Commonwealth v. Fitzmartin,* 376 Pa. 390, 102 A.2d 893, 894 (1954). The Purcell and Wiedemann deeds contained no such disclaimer. In addition, in *Department of Forests and Parks v. George's Creek Coal & Land Co., supra,* 242 A.2d at 169, heavily relied on by Downstate, the lower court expressly found that the original parties had no regard or concern for the surface of the rugged, mountainous and unimproved land and that they intended to reserve to the mineral owner all rights to mine coal, even if the method used destroyed the surface. In this case in contrast the government's interest in the surface was paramount.

Downstate argues that the government's right to control surface use arises by reason of the regulations which were incorporated into the deeds and is relevant only to the issue of compliance, not to the merits of the title dispute. Downstate misses the point. Those regulations govern development of minerals that are concededly the property of the mineral owner. If the limestone is owned by the mineral owner, he can destroy the surface subject only to a regulation limiting occupation or disturbance of the surface to that which is reasonably necessary. In this case, however, the issue is not whether the mineral owner complied with those regulations, but whether the limestone is owned by the surface or the miner-

---

1. The parties stipulated that all testimony and exhibits introduced at the preliminary injunction hearing were part of the record of the hearing on the merits (Stip. 14).

al owner. The intention of the original parties to grant the government the right to control surface use is surely relevant to the question of title. Cf. *Watt v. Western Nuclear, Inc.,* —— U.S. ——, ——, 103 S.Ct. 2218, 2224, 76 L.Ed.2d 400 (1983) (Congress did not wish to entrust the development of subsurface resources to ranchers and farmers; gravel deposits are therefore considered a part of the mineral reservation).

Construing the mineral reservation to exclude limestone is not only consistent with the purpose of the Weeks Act acquisition by the government, it is also consistent with the actions of the grantors and their heirs after the 1935 conveyance. See *Kinder v. LaSalle County Coal Co., supra,* 310 Ill. at 135, 141 N.E. 537. Within three years of the mineral reservation, the United States, by permit under its common-rock disposition authority, 36 C.F.R. § 251.4a, authorized limestone quarrying on the contiguous Grant tract which extended onto the Purcell tract. No objection was ever raised to this exercise of dominion and control. In addition, the United States under its common-rock disposition authority issued several prospecting permits for limestone on the Purcell and Wiedemann lands without objection. Downstate attempted to explain why the grantors never objected by arguing that removal was not of sufficient magnitude to call for royalty payments. However, testimony to that effect by 90-year-old Grace Wiedemann Sutton—she testified that her family did not receive payment for removal of limestone by government-authorized prospectors "probably * * * because they hadn't been enough, you know—gotten out maybe to go into that area"—even if credible was purely speculative (Tr. 69). Finally, although it was obvious that the property contained limestone, the grantors and their heirs did nothing to manifest any interest in it until 1980. Instead they entered into oil and gas leases both before and after the reservation of mineral rights, and they retained the rights to oil and gas in 1980 when they sold the mineral rights to Mr. Barter. This passivity with respect to limestone is inconsistent with a claim of ownership.

■ Downstate argues that the grantors clearly meant to reserve something when they drafted the mineral reservation, and that limestone, as a mineral, fits squarely within its terms.[2] Limestone of course may be a mineral in the broad sense of the word, as it is not an animal or vegetable resource. See *Watt v. Western Nuclear, Inc., supra,* —— U.S. at ——, 103 S.Ct. at 2223. Cf. *Cumberland Mineral Co. v. United States, supra,* 513 F.2d at 1401 (rocks are "mixtures" and therefore outside the mineral category from the scientific standpoint). Classification as a generic mineral resource, however, does not make limestone a mineral in legal contemplation, or necessarily in the contemplation of the parties to the conveyance. *Id.* In addition, although Downstate's geologist testified that limestone was the only known mineral resource on the property from 1925 to the present (Tr. 124–129), it is evident from the grantors' behavior that they thought the land might contain oil and gas as well. Even the geologist admitted on cross-examination that he did not know if any other minerals were present at the site of the limestone deposit because there had not been any deep drilling (Tr. 141). Thus excluding limestone from the scope of the mineral reservation does not make the reservation meaningless; in light of the purposes underlying the conveyance and the

---

**2.** Downstate argues that the use of the word "upon" in the conveyance reserving minerals "in, upon, or under the real estate" mandates the conclusion that limestone is included because it is a solid lying "upon" the land. But Downstate has given us no reason to reject the government's explanation that in Illinois, a "fugacious" or "wandering" doctrine state, the owner of mineral rights in oil and gas has the right to explore for them and reduce them to possession, but does not own them in place. *Jilek v. Chicago, Wilmington & Franklin Coal Co.,* 382 Ill. 241, 47 N.E.2d 96 (1943). Thus the insertion of the word "upon" makes express the mineral owner's right to go upon the surface to explore for the oil and gas beneath it. Cf. *Cumberland Mineral Co. v. United States, supra,* 513 F.2d 1399 (court did not give "in, upon, or under" language any special significance).

subsequent action (or inaction) of the grantors and their heirs, there is no basis for advocating the contrary position.

The judgment of the district court is affirmed.