17 February 2000

No.  3–99–0315

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2000

SAVE OUR LITTLE VERMILLION )  Appeal from the Circuit Court

ENVIRONMENT, INC., )  of the 13th Judicial Circuit,

)  La Salle County, Illinois,

Plaintiff-Appellee, )

)  

v. )  No.  98–MR–109

)  

ILLINOIS CEMENT COMPANY, )  Honorable

)  Robert Carter,

Defendant-Appellant. )  Judge, Presiding.

_________________________________________________________________

JUSTICE SLATER delivered the opinion of the court:

_________________________________________________________________

Plaintiff, Save Our Little Vermillion Environment, Inc. (SOLVE), a nonprofit corporation, filed a complaint for declaratory and injunctive relief against defendant Illinois Cement Company.  SOLVE sought to prevent Illinois Cement from mining limestone on a parcel of land (the property) adjacent to Illinois Cement’s existing quarrying operation.  The trial court granted summary judgment in favor of SOLVE, finding that SOLVE’s ownership interest in the "coal and other minerals" underlying the property included the limestone.  We reverse.

Facts

The property at issue, consisting of approximately 34 acres, was conveyed by George Colling to John Fabricki in 1907, "[r]eserving the coal and other minerals underlying the same."  SOLVE subsequently acquired an undivided three-fifths interest in the rights reserved by Colling.  Illinois Cement is the successor to the rights of Fabricki, which it acquired by deed in 1993.  Illinois Cement is a manufacturer of cement; a major component of cement is limestone.  In October of 1997, the Illinois Department of Natural Resources issued a surface mining permit to Illinois Cement to engage in the mining of limestone on the property.  In July of 1998, SOLVE filed a complaint seeking to be declared the owner of the limestone and to enjoin Illinois Cement from mining.

At the hearing on SOLVE’s motion for a preliminary injunction, James Kirk, a quarry foreman for Illinois Cement, testified that the overburden, or surface material covering the limestone, varied from 3 feet to 60 feet.  According to Kirk, the only way to mine the limestone was by removing the surface material.  H. John Head, a mining engineer, similarly testified to the depth of the overburden and that the limestone could not be removed without disturbing the surface.  According to Head, quarrying was the only feasible way to mine the limestone.

SOLVE’s motion for a preliminary injunction was denied.  Thereafter, both SOLVE and Illinois Cement filed cross motions for summary judgment.  The trial court granted summary judgment in favor of SOLVE and this appeal followed.

Analysis

Summary judgment should be granted when the pleadings, depositions and affidavits demonstrate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  735 ILCS 5/2-1005(c) (West 1998); 
Jackson v. TLC Associates, Inc.
, 185 Ill. 2d 418, 706 N.E. 2d 460 (1998).  Review of an order granting summary judgment is 
de
 
novo
.  
Jackson
, 185 Ill. 2d 418, 706 N.E. 2d 460; 
Bituminous Casualty Corp. v. Royal Insurance Co.
, 301 Ill. App. 3d 720, 704 N.E. 2d 74 (1998).

In general, an owner of land is entitled to the surface and all that is below it.  
Miller v. Ridgley
, 2 Ill. 2d 223, 117 N.E. 2d 759 (1954).  However, it is clear that the mineral estate may be severed from the surface estate by granting the minerals and reserving the surface, or by granting the surface and reserving the minerals.  
Failoni v. Chicago & North Western Ry. Co.
, 30 Ill. 2d 258, 195 N.E. 2d 619 (1964).  In this case the grantor reserved "the coal and other minerals underlying" the property.  At issue is whether such a reservation includes limestone, or whether limestone is part of the surface estate.

The parties recognize that 
Kinder v. La Salle County Carbon Coal Co.
, 310 Ill. 126, 141 N.E. 537 (1923), is the leading case in this area, but they disagree about its application to the facts presented here.  In 
Kinder
, James Cowey conveyed, in 1867, "all the bituminous or stone coal, together with the right to mine the same" (
Kinder
, 310 Ill. at 127, 141 N.E. at 537) as well as "the oil and minerals, of every description," (
Kinder
, 310 Ill. at 127-28, 141 N.E. at 538) underlying a parcel of land less than one mile from the property at issue in this case.  
In 1869, Cowey conveyed his remaining interest in the property, reserving "all bituminous or stone coal and other minerals, as well as all petroleum oil, in, upon or underlying said premises above described, together with the right to mine and raise the same."  
Kinder
, 310 Ill. at 128, 141 N.E. at 538.

At issue in 
Kinder
 was whether the limestone on the property belonged to the owner of the mineral estate or the owner of the surface estate.  The 
Kinder
 court rejected the argument that the technical definition of the term "minerals" was controlling (see 
Kinder
, 310 Ill. at 132-33, 141 N.E. at 539-40), finding instead that the rule for interpreting grants of minerals was "’that each case must be decided upon the language of the grant or reservation, the surrounding circumstances, and the intention of the grantor if it can be ascertained.’"  
Kinder
, 310 Ill. at 134, 141 N.E. at 540.  Because of the obvious similarities between 
Kinder
 and the instant case, we set forth what we deem to be the most significant portion of the court’s analysis at some length:

"When Cowey conveyed to the Chicago Coal Company he was engaged in mining coal in the immediate vicinity of appellees’ land, then owned by him.  Coal was the only known mineral under the surface which had any commercial value.  Cowey knew appellees’ land was underlaid with some gravel and limestone.  On parts of the land the limestone was on the surface, and on the rest of it was covered with loam, sand and gravel from a few inches in depth to a depth, in places, of fifty or sixty feet.  Where the loam was of sufficient depth the land was available for cultivation in crops and was productive.  Cowey knew the limestone was so near the surface that it could not be mined by underground methods without the practical destruction of the agricultural surface.  To our minds it would be unreasonable to say his intention was to reserve only the agricultural surface above the limestone and convey to the grantee the limestone, with the right to remove it, and thereby destroy all he had reserved.  The granting clause of the deed conveys only the coal, ’together with the right to mine the same,’ and the quit-claim clause of ’all minerals of every description’ underlying the land described cannot reasonably be construed to embrace minerals other than such as could be removed by mining operations underground, which would not destroy the surface for agricultural purposes.  It is altogether reasonable to presume that Cowey and his grantee had no thought of limestone, sand and gravel as minerals.  They knew those were on or near the surface and were of an entirely different nature from coal and oil,—the minerals specifically mentioned in the deed and which could be mined by underground methods.  Two years after Cowey made the deed to the Chicago Coal Company he conveyed the land in controversy to Kinder and Burrell, reserving ’all bituminous or stone coal and other minerals, as well as all petroleum oil, in, upon or underlying said premises above described, together with the right to mine and raise the same.’  By that reservation the grantor meant and intended to except from the grant what he had conveyed to the Chicago Coal Company, and the words ’the right to mine and raise the same,’ show the reservation was intended to be limited to minerals which could be mined and raised by underground workings without destruction of the surface."  
Kinder
, 310 Ill. at 134-35, 141 N.E. at 540.

While 
Kinder
 would appear to favor Illinois Cement’s position that they own the limestone, SOLVE argues, and the trial court found, that 
Kinder
 is distinguishable from the instant case.  SOLVE asserts that the following differences between 
Kinder
 and the case at bar favor a result contrary to 
Kinder
: (1) the 
Kinder
 deeds contained the language "the right to mine and raise the same"; (2) substantial amounts of limestone were visible on the surface of the land in 
Kinder
; and (3) because limestone was not a commercially valuable commodity in 1867, the grantor presumably did not consider limestone a mineral.

SOLVE contends that the language "the right to mine and raise the same" evidenced an intent by the grantor to limit the grant to minerals that could be mined and raised by underground mining without destruction of the surface.  SOLVE argues that because no such limitation is present in the instant case, there is no basis not to interpret "other minerals" as including 
all
 minerals, including limestone.

We agree that the 
Kinder
 court relied on the "right to mine and raise" language as a factor supporting its decision.  However, we do not believe such language was critical to the court’s decision, nor do we find the absence of such language particularly significant.  While SOLVE characterizes the language as a "limitation," it could be seen simply as recognition of the rights of the owner of the mineral estate to enjoy that which he has acquired (see 
Jilek v. Chicago, Wilmington & Franklin Coal Co.
, 382 Ill. 241, 47 N.E. 2d 96 (1943) (when a mineral estate is severed from a surface estate, the means of obtaining the minerals pass with the grant by implication; no express covenant is necessary)) or as an expansion of those implied rights.  On the other hand, one could argue that leaving out such language is evidence of an intent to limit the mineral owner’s rights and protect the surface estate to the maximum extent possible.  Thus, we find that the presence or absence of such language is not dispositive of the grantor’s intent.

SOLVE further argues that because limestone was visible on the surface in 
Kinder
, it was obvious that mining the limestone would destroy the surface.  This led the supreme court to conclude that the grantor could not have reasonably intended to convey the limestone, thereby destroying the surface which he had reserved.  Conversely, in this case the limestone was covered by overburden ranging from 3 to 60 feet.  However, the absence or presence of limestone on the surface is relevant only to the extent that it aids in discerning the grantor’s intent.  While the presence of limestone on the surface allowed the 
Kinder
 court to surmise that Cowey did not intend to convey the limestone, its absence in this case does not support the opposite conclusion.  It is true that because limestone is not present on the surface of the property we cannot presume, as the 
Kinder
 court did, that the grantor knew that mining it would destroy the surface.  Neither, however, can we know whether he was aware of its existence.  Essentially, the absence of limestone on the surface tells us nothing about Colling’s intent one way or the other.

SOLVE also maintains that the 
Kinder
 court’s conclusion that Cowey and his grantee did not consider limestone a mineral was based on the fact limestone had no commercial value in 1867.  However, by 1907 limestone was being used extensively in the manufacture of Portland cement.  See 
Kinder
, 310 Ill. at 129-30, 141 N.E. at 538.  While that may be true, it is of little help in determining Colling’s intent.  First, it cannot be ascertained if Colling knew of the existence of the limestone.  Second, if he knew of it, was aware of its value, and intended to keep it, why did Colling fail to specifically reserve the limestone, as he did the coal?

 In summary, while it is true that the instant case is distinguishable from 
Kinder
, those differences do not dictate a contrary result.  Rather, 
Kinder
 requires each case to be decided upon the language of the grant or reservation, the surrounding circumstances, and the intention of the grantor, if it can be ascertained.  
Kinder
, 310 Ill. at 134, 141 N.E. at 540.  In this case there is no evidence of Colling’s intent beyond the language of the reservation, "coal and other minerals."  That language is ambiguous, and the "surrounding circumstances" are not helpful in resolving that ambiguity.

Illinois Cement asserts that established principles of contract construction support its position.  We agree.  Under the doctrine of 
ejusdem
 
generis
, where general words follow an enumeration of specific things of a particular class, the general words are to be construed as applying only to things of the same general class as those enumerated.  
New Hampshire Insurance Co. v. Hanover Insurance Co.
, 296 Ill. App. 3d 701, 696 N.E. 2d 22 (1998).  In 
Kinder
 the court stated that limestone, sand and gravel "were of an entirely different nature from coal and oil."  
Kinder
, 310 Ill. at 134, 141 N.E. at 540.  Coal is a source of energy that can be mined without disturbing the surface.  Limestone is not combustible and cannot be mined without destroying the surface.  Moreover, decisions of other jurisdictions that have considered the question have held that a grant or reservation of "minerals" does not include limestone.  See, 
e.g.
, 
Holland v. Dolese Co.
, 540 P. 2d 549 (Okla. 1975); 
Little v. Carter
, 408 S.W. 2d 207 (Ky. 1966); see also 
Downstate Stone Co. v. United States
, 712 F. 2d 1215 (7th Cir. 1983) (reservation of "all minerals" did not include limestone); 58 C.J.S. 
Mines and Minerals
 §175, at 161 (1998) (limestone is not ordinarily included in a grant or reservation of minerals; language of reservation should be clear and specific to justify inclusion of limestone).  Indeed, SOLVE has not cited, nor has our research disclosed, a single case from 
any
 jurisdiction construing the term "minerals" as including limestone.

In addition, "where there is doubt as to the construction of a deed it is to be interpreted most favorably for the grantee."  
Patton v. Vining
, 14 Ill. 2d 11, 14, 150 N.E. 2d 606, 608 (1958); see 
A. S. & W. Club v. Drobnick
, 26 Ill. 2d 521, 187 N.E. 2d 247 (1962) (in case of ambiguity, deed is construed most strongly against its author).  In this case SOLVE’s interest in the property is derived from the grantor, Colling, and Illinois Cement is successor to the rights of Fabricki, the grantee.  Accordingly, any ambiguity should be resolved in favor of Illinois Cement.

We find, therefore, that Illinois Cement is the owner of the limestone on the property.  Accordingly, the judgment of the circuit court granting summary judgment in favor of SOLVE is reversed.  Pursuant to our authority under Supreme Court Rule 366(a)(5) (155 Ill. 2d R. 366(a)(5)) summary judgment is entered in favor of Illinois Cement.  See 
Loftis v. Vesta Companies
, 292 Ill. App. 3d 772, 686 N.E. 2d 383 (1997) (entering summary judgment for appellant).

Reversed; judgment entered.

HOMER and KOEHLER, J.J., concur.